## CENTRAL NEBRASKA PUBLIC POWER & IRRIGATION DIST. v. HARRISON et al.

### No. 12139.

Circuit Court of Appeals, Eighth Circuit.
April 23, 1942.

M. M. Maupin, of Ogallala, Neb. (R. O. Canaday and P. E. Boslaugh, both of Hastings, Neb., and R. H. Beatty, of North Platte, Neb., on the brief), for appellant.

William E. Shuman and Bert L. Overcash, both of North Platte, Neb., for appellees.

Before SANBORN and WOODROUGH, Circuit Judges, and TRIMBLE, District Judge.

WOODROUGH, Circuit Judge.

The Central Nebraska Public Power and Irrigation District has taken this appeal to reverse a judgment for $32,601.13 rendered upon the verdict of a jury in condemnation proceedings instituted by the District in the federal district court for the taking of certain lands necessary for the public project in which it is engaged.

■ The District is a qualified licensee under the Federal Power Act, 16 U.S.C.A. § 791a et seq., and is empowered to exercise the right of eminent domain pursuant to the provisions of 16 U.S.C.A. § 814, the last sentence of which prescribes that the practice and procedure in any action or proceeding for the purpose of exercising the right in the District Court of the United States shall conform as nearly as may be with the practice or procedure in similar action or proceedings in the court of the state where the property is situated. As the lands involved are in Nebraska, the condemnation proceedings were had in the federal court in that state, but the law and procedure of the state were controlling. Cuyahoga River Power Co. v. Northern Realty Co., 244 U.S. 300, 37 S.Ct. 643, 61 L.Ed. 1153; Morris & Co. v. Skandinavia Insurance Co., 279 U.S. 405, 49 S.Ct. 360, 73 L.Ed. 762; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Hotz v. Federal Reserve Bank, 8 Cir., 108 F.2d 216; Feltz v. Central Nebraska Power District, 8 Cir., 124 F.2d 578.

The District commenced its condemnation proceedings on March 27, 1940, by filing its petition to appropriate the lands for the purposes of its project in which it alleged, among other things, "that it has endeavored to procure said lands by purchase from the owners thereof, but has been unable to agree with the owners or any of them as to the value of their respective interest in said lands to be taken or the damage to be sustained by them by reason of the appropriation of said land by the District and that the District can not acquire by contract the right to use or damage said land", and "that applicant is entitled to the appointment of appraisers to appraise said lands and for the condemnation of the same in accordance with the laws of Nebraska", in which it prayed

that the court appoint appraisers to "inspect and view said lands and to assess the value of said lands and any damages which the owners * * * may sustain by reason of the appropriation thereof." The appraisers appointed pursuant to the petition reported their award of damages in the sum of $26,282.60 and both the condemnor and the landowners appealed from the award to the district court. The court directed that pleadings be filed by the landowners as plaintiffs and the District as defendant, and issues were accordingly formulated by petition, answer and amended reply.

It appeared from the answer of the District and the amended reply of the landowners that on April 18, 1937, the landowners had executed and delivered two written "Options" to the District by the terms of which they had agreed in consideration of one dollar in hand paid and $1,128, payable within sixty days, to grant the District the option of purchasing the lands for the total sum of $18,500, the time within which the District might exercise the options being limited to two years. The options contained the provision: "It is understood that the second party is purchasing these premises for works of internal improvement and that this agreement is made to avoid condemnation proceedings under the second party's power of eminent domain, and that the purchase price paid hereunder includes payment of all damages to first parties' other property adjoining the land described herein."

The landowners denied the validity of the options in their amended reply, asserting that the signature thereof had been obtained by fraud and admitted that they had refused to perform them. The District thereupon filed its motion for a summary judgment awarding the lands to it for the price specified in the options, asserting that the allegations of the amended reply were insufficient to avoid the options. The landowners having filed objections to the motion, the court heard evidence adduced by both parties, and on consideration overruled the motion. In a written opinion which accompanied its ruling, the court stated its conclusion that the District had abandoned any rights under the options by the commencement of the condemnation proceedings. It observed that the validity of the options was in dispute between the parties but that it was not necessary to pass upon the issue of fraud involved in the dispute and the court had not done so. The court further indicated that it would be held upon the trial that the option agreements were not competent evidence since their validity was in dispute between the parties and the issues in the dispute had not been determined. Accordingly, when the District offered the options in evidence on the trial before the jury they were excluded and the judgment which was rendered on the jury verdict exceeds the amount specified in the options by $14,-101.13.

On this appeal from the judgment the District contends (1) that it had the right to have the validity and binding effect of the options adjudicated and settled against the landowners in the appeal which it took from the award of the appraisers and it contends that the court erred in those proceedings in permitting the jury to award the damages without respect to the options and in rendering judgment for an amount exceeding the purchase price specified in the options. It presents a further contention, (2) that even if the options were not conclusive of the amount which the landowners were entitled to recover in the condemnation, the court erred in not receiving them in evidence as an admission of the landowners against interest.

(1) It is contended for the landowners that under the condemnation law of Nebraska and the allegations made by the District in its petition for condemnation to the effect that it had been unable to agree with the landowners as to the value of their interest in the lands, it was not open to the District to litigate the validity of, or to claim binding effect for, the options in its appeal from the appraiser's award. It is stressed that Nebraska decisions determine that an appeal brings up for review precisely the same issues that were involved below, and that as the only issue before the appraisers was the issue of value, no other issues could be tried on the appeal. Also that the allegations of the District's original petition to appropriate the lands fixed the issue so as to present only the value of the lands and damages for trial and determination. It is argued that "under Nebraska law there is no condemnation possible if condemnor already has an agreement."

The District has prosecuted many condemnation proceedings in the district court in Nebraska and several of them have resulted in appeals to this court which have

necessitated consideration of Nebraska condemnation law and procedure. Central Nebraska Public Power and Irrigation District v. Feltz, 8 Cir., 124 F.2d 578; Central Nebraska Public Power and Irr. Dist. v. Berry, 8 Cir., 124 F.2d 586; McGinley v. Central Nebraska Public Power & Irr. Dist., 8 Cir., 124 F.2d 692; Central Nebraska Public Power & Irr. Dist. v. Fairchild et al., 8 Cir., 126 F.2d 302, decided Feb. 27, 1942; Burnett v. Central Nebraska Public Power & Irr. Dist., 8 Cir., 125 F.2d 836; Samuelson v. Central Nebraska Public Power & Irr. Dist., 8 Cir., 125 F.2d 838. Though none of the Nebraska cases referred to has settled the precise questions here involved, they disclose the constitutional and statutory provisions and the course of decision in Nebraska controlling condemnation proceedings in the state.

 We think none of the decisions would justify us in holding "that under Nebraska law there is no condemnation possible if condemnor already has an agreement" with the owners of the land necessary for the condemnor's project. The state statute contemplates that good faith effort to buy the land needed for public improvements shall be made before the right of eminent domain is exercised, Shirley v. Harlan County, 117 Neb. 846, 223 N.W. 284, and where the effort succeeds and results in purchase, it can not be held that the right to exercise eminent domain is thereby lost to the utility which requires the land and is unable to obtain it either on account of the landowner's refusal to surrender or because of defects of title that may be settled in condemnation proceedings. It is not for this court, however, to prescribe the terms in which the condemnor's petition to condemn must be formulated in order to preserve and enforce the right in cases where a purchase has been consummated but necessity for condemnation remains. The decisions in Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240, and Wachovia Bank & Trust Co. v. United States, 4 Cir., 98 F.2d 609, although not based directly on Nebraska law, clearly preclude denial of the right to exercise eminent domain where a contract to purchase has been entered into which contemplates and includes an agreement to perfect the title through condemnation proceedings.

But in this case the option contracts which the District sought to enforce in its appeal proceedings in the district court

show on their face that they were not made in contemplation of or intended to confer rights upon the District in proceedings to which it might resort in the exercise of its right of eminent domain. On the contrary, they provided expressly that "this agreement is made to avoid condemnation proceedings under the [District's] power of eminent domain." Obviously the question presented by the attempt of the District to avail itself of these options in its appeal from the condemnation award in this case is different from that considered by the courts in the Danforth or Wachovia Bank cases.

██ The dispute between the District and the landowners concerning the validity and effect of the options which had been executed by the parties existed at the time when the District filed its petition to appropriate the lands in this case, the District claiming that it had the right to a specific performance of the promise of the options to sell and convey the lands, and the landowners claiming fraud and that they were not bound. It was open to either of the parties to proceed in the equity court upon their respective claims. The landowners took no steps to remove the cloud of the options from their title and by submitting without objection to the inquest of the appraisers and taking an appeal from the award of damages in condemnation they undoubtedly waived resort to any direct action to annul the options. We think the allegations made by the District in its petition to condemn that it had endeavored to procure the lands by purchase but had been unable to agree with the owners, and the prayer to have assessed "the value of said lands and any damages" and for "the condemnation of the same in accordance with the laws of the state, etc.," also unequivocally fixed the issue for determination in the condemnation proceedings and evidenced a waiver or abandonment by the District of any right to litigate therein a claimed contract to purchase the lands at a price agreed upon. The District being an appellant from the award of the appraisers could obtain only a trial de novo of the issue which it had itself fixed by the pleading upon which it commenced the condemnation.

 The District concedes that no other issue except the amount of the damages was before the appraisers appointed pursuant to the District's petition, but contends that upon its appeal "the court

obtained jurisdiction for all purposes incident to the action and to grant full, complete and adequate relief to all parties to said proceedings." The landowners point to the District's petition upon which the court appointed the appraisers and to the sole issue resolved by the appraisers and insist that the appeals brought up for review only the question of damages presented to the appraisers.

In Burlington & M. R. Co. v. Schluntz, 14 Neb. 421, 16 N.W. 439, 440, where on appeal from an award of commissioners in a condemnation proceeding the issue of damages was attempted to be enlarged to include injuries to growing crops outside of the property taken through trespass of the condemnor's servants, the court said: "The appeal brought to the district court for decision by a jury precisely the same questions that were covered by the award, and none other."

Trester v. Missouri Pac. Ry. Co., 33 Neb. 171, 49 N.W. 1110, 1113, was tried on appeal from the award of appraisers in condemnation proceedings. There were objections that there had been a failure to give notice of condemnation and to swear the appraisers. On appeal in the Supreme Court of Nebraska the court said: "The only question passed upon by the appraisers was the amount of damages sustained by the plaintiff. On appeal that question was tried de novo, and it was then wholly immaterial whether the appraisers were sworn or not."

In State v. O'Fink, 84 Neb. 185, 120 N. W. 938, 940, the Supreme Court of Nebraska, in considering the right of the jury to evaluate lienhold interests and to make an award for them in a condemnation proceeding, said: "It could scarcely be contended that such a judgment could be rendered on appeal unless such findings should have been made and reported by the appraisers, for it is elementary that nothing can be heard upon the appeal that could not properly have been determined by the board or court from which the appeal is taken."

In United States National Bank v. Loup River Public Power District, 1941, 139 Neb. 645, 298 N.W. 529, the condemnor alone appealed from the award of the appraisers in condemnation proceedings. The landowner filed a lengthy petition in the appeal and the condemnor then moved to affirm the award of the appraisers (in effect abandoning the appeal which it had taken). The Supreme Court affirmed the order sustaining the motion. It said:

"It is somewhat difficult to determine just what the theory of condemnee is, but apparently the contention is that the proceedings in the county court were not legal proceedings in the sense that they constituted an action at law, and when the appeal was docketed in the district court, by statute, the condemnee became plaintiff and the condemnor defendant, and that this was, in reality, the beginning of a law action and that, as condemnee was plaintiff in that action and had filed a petition, the same could not be dismissed or disposed of without the consent of the condemnee.

"While it is true that the proceedings for condemnation in the beginning are not in the nature of an action at law, yet it does not follow that, when an appeal is taken from such proceedings to the district court and the case is there docketed, such action constitutes the beginning of an action in the generally accepted sense. But for the appeal, the award of the appraisers would be final and there never would be any proceedings in the district court. Consequently, it is the appellant who is responsible for instituting the action in the district court, even though by statute the parties in a condemnation action are designated in the reverse order from what they appear to be in the proceedings in the county court.

\* \* \* \* \*

"The fact that a petition was filed in the district court by condemnee cannot change the rule, because the filing of that petition was not essential or necessary. This court has, in a number of cases, held that, where on appeal the only question is the amount of damages, no pleadings are necessary. Fremont, E. & M. V. R. Co. v. Meeker, 28 Neb. 94, 44 N.W. 79; Trester v. Missouri P. R. Co., 33 Neb. 171, 49 N.W. 1110. Since no petition was necessary, plaintiff could not acquire any additional rights by the filing of same.

"In principle, there is no reason why appeals in condemnation matters should not be governed by the same rules which apply to appeals from justice courts. In the latter class of cases our court is committed to the rule that appellant may dismiss such appeal without consent of appellee. Eden Musee Co. v. Yohe, 37 Neb. 452, 55 N.W. 866."

These decisions, conforming with others which we have cited, fully establish that

under Nebraska condemnation procedure the appeal from the appraisers' award is not the institution of a new action but is a strictly appellate proceeding, bringing up for trial de novo only the issues which were for determination below. They sustain the conclusion and ruling of the trial court limiting the issue for trial on the appeal before it to the question of damages and excluding the controverted new issue concerning the validity and effect of the options.

(2) The further question is whether the trial court erred in rejecting the options as evidence of admissions of the landowners against interest. It is conceded that generally free and voluntary offers to sell made by a property owner which reflect his estimate of the value of his property are admissible against him on trial of the issue of value. But in this case the court's refusal to receive the options at the trial on the issue of value is justified on the grounds, (a) that the offer would interject collateral disputed issues, (b) that the probative value was slight and questionable, and (c) that the options were in the nature of compromise settlements to avoid litigation in condemnation proceedings.

(a) The landowners pleaded in their amended reply that at the time of the negotiations for the options one of them was an old man in ill health who died three months and five days afterwards. The other two were married women and all of them were without knowledge of the facts concerning which the District's agent made representations that were relied on and induced the signing of the options. The representations were in substance that the Government of the United States owned the riparian rights along the river upon which the lands abutted; that the government required the lands for a reservoir and had fixed the maximum amount that could be paid; that damages to other lands of the owners not taken could not lawfully be and would not be paid; that unless the owners signed the options the District would take their lands by condemnation proceedings which would be litigated in court for years and use up all the money so they would lose the land and get nothing. In fact the riparian lands were accretions belonging to the landowners which increased the acreage owned by them some two hundred acres above the acreage stated in the options and upon which the option price was based. It was also pleaded that upon discovery of the fraud $1,128 delivered by the District to landowners had been returned, no part being retained by the landowners.

On the hearing of the District's motion for summary judgment before the trial and in the absence of the jury, the landowners introduced testimony tending to sustain the allegations of the pleading which was countered by the District. Though the court declined to pass on the dispute, it was apparent that it was actual and not merely colorable. The receipt of the options in evidence would manifestly have introduced issues of fraud entirely remote from the inquiry as to value and damages.

(b) The evidence which was received and considered by the jury on the question determined by the verdict has not been brought up on this appeal but it cannot be assumed that the District was without some competent evidence to sustain its claims as to values and damages. We can not fully appraise what cumulative weight the options would have added to such evidence. That was more apparent to the trial court. The options were dated April 18, 1937, and the commencement of condemnation, which was the date to which the jury was required to relate its valuation, was March 27, 1940. Under all the circumstances shown, the conclusion that the probative value was slight and questionable is sustained by the record.

(c) That the options were given to avoid threatened exercise of eminent domain proceedings in court is plainly to be inferred from the recitals of the options themselves, and these recitals coupled with the testimony before the court left little room to doubt that the options were in fact in the nature of compromise settlements.

The reception or rejection of evidence is a matter in which some latitude of discretion must be recognized in the trial court. Each of the grounds upon which the options were rejected is supported in the record and taken together justified the court in exercising its discretion to exclude them. There was no absolute right of the District to have the jury consider them on the issue of value and there was no abuse of discretion or prejudicial error in the ruling.

The judgment is accordingly affirmed.