UNITED STATES v. BUILDING KNOWN AS 651 BRANNAN STREET, SAN FRANCISCO, CAL., et al.

No. 22314–G.

District Court, N. D. California, S. D.

May 26, 1944.

M. Mitchell Bourquin, Sp. Asst. to Atty. Gen., for plaintiff.

Corbet & Selby and John Selby, all of San Francisco, Cal., for defendant John Deere Plow Co. of Moline.

GOODMAN, District Judge.

On September 28, 1942, John Deere Plow Company of Moline, a corporation, was the owner of a four story and basement reinforced concrete building commonly known as 651 Brannan Street, located in the warehouse and storage district of San

Francisco, and therein conducted the business of selling and repairing farm machines of various kinds, having at the time on hand a large stock of farm machine equipment, appurtenances and repair parts together with fixed machinery and equipment of a heavy nature used in assembling and repairing farm machinery. The United States filed its complaint in condemnation on September 28, 1942, pursuant to 26 Stat. 316, as amended by 40 Stat. 241, 40 Stat. 518, 50 U.S.C.A. § 171 and Pub.Law 507—77th Congress, 56 Stat. 176, 50 U.S.C.A.Appendix, § 632, and Pub. Law 441—77th Congress, 56 Stat. 53, whereby it took and condemned at the instance of the Secretary of the Navy, a leasehold interest in said premises for a term of years ending January 30, 1943, with the right to renew such leasehold interest annually for the duration of the war plus one year thereafter. Upon the filing of the complaint the court issued an order for immediate possession. Pub.Law 507—77th Congress—50 U.S.C.A.Appendix, § 632.

On February 26, 1943, pursuant to stipulation and by permission of court, the complaint was amended to provide for the taking of a leasehold interest for a term ending June 30, 1943 with the right to renew annually for the duration of the war and one year thereafter, upon giving notice to renew sixty days prior to the expiration of any term, together with the right to cancel such use and occupation on sixty days' written notice to the owner. A further and second amendment, also pursuant to stipulation and court permission, was filed on May 13, 1943, whereby the estate or interest taken was alleged to be the exclusive use and occupancy of the land and premises for a term ending June 30, 1944. Upon the issues raised by the complaint as amended by the second amendment and the answer thereto, the cause was tried to the court without a jury.

At the trial it was stipulated that the term actually commenced November 1, 1942.

Two issues require determination by the court:

1. The amount of compensation to be paid to the defendant John Deere Plow Company of Moline for the use and occupancy of the condemned land and premises for the term beginning November 1, 1942 and ending June 30, 1944.

2. Is the defendant entitled to receive compensation by way of reimbursement to it for the cost and expense of removing its stock of merchandise and equipment?

Compensation for Rental Value.

The building contained 171,875 square feet of floor space. Defendant contended, and presented testimony of real estate experts to the effect, that the fair market value of the use of the premises for the stated term was, on November 1, 1942, 3¢ per square foot, equal to $5,156.25 per month, or $61,875 per year. On behalf of the government, expert testimony was proffered and admitted, from which the government argued that the fair market value of the use of the condemned premises was 2¢ per square foot. One of the defendant's witnesses, who had testified to the 3¢ per square foot valuation, based his opinion in part upon the length of the term specified in the first amendment to the complaint rather than that alleged in the second and last amendment. Another of the experts for defendant conceded that his 3¢ per square foot valuation was to some extent predicated upon the cost involved to the defendant in equipping another plant and warehouse and moving its business and equipment thereto, when possession was taken by the government. It developed in the examination of the government's expert that going rentals of similar buildings in the district approximated 2¢ per square foot, although in one or two instances, in the case of somewhat similar buildings, rentals were in excess of 2¢ and reached 3¢. However, special factors were involved in the cases where the rentals reached the 3¢ rate.

I am not satisfied nor convinced by a preponderance of all the evidence, that the 3¢ rate is the proper standard of evaluation. I am also not convinced by the testimony that the rental value is 2¢ per square foot. I am of the opinion, from all of the evidence, that the fair market value of the use of this property is 2½¢ per square foot. Accordingly I fix the compensation to be paid to the defendant for the term November 1, 1942 to June 30, 1944 at the sum of $4,296.87 per month or the total sum of $85,937.40.

I have not arrived at this figure by striking a balance between the two opposing valuations, a nonjudicial process condemned in United States v. 711.15 Acres

of Land in Eden Tp., D.C., 51 F.Supp. 30. Rather is the court's conclusion based on all of the factors disclosed in the evidence, upon which fair valuation must depend, namely, the character, type, capacity and location of the premises, the length of the leasehold term and also the opinions of the experts.

■ Some contention is made that in negotiations prior to the filing of the suit, the government actually offered or agreed to lease the property at 3¢ per square foot. However the evidence does not disclose any such agreement having been actually consummated. Furthermore it does not appear that appraisals or valuations, such as were subsequently made by government appraisers, were made or had at the time of such negotiations. Such offers or negotiations are neither conclusive nor persuasive evidence of fair market values. Hanson Lumber Co. v. United States, 261 U.S. 581, 43 S.Ct. 442, 67 L.Ed. 809; Central Nebraska Pub. Power & Irr. Dist. v. Harrison, 8 Cir., 127 F.2d 588.

■ Even if the pre-condemnation negotiations approached the dignity of an "agreement", the purpose was to avoid condemnation. Hence evidence of such transactions only throws some light (and that is of questionable probative weight) upon the issue of fair market value. Hanson Lumber Co. v. United States, supra; Central Nebraska Pub. Power & Irr. Dist. v. Harrison, supra; Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L. Ed. 240, and Wachovia Bank & Trust Co. v. United States, 4 Cir., 98 F.2d 609, are not contra.

Is the Defendant Entitled to Compensation for Its Expense in Moving Stock in Trade and Equipment to Other Premises?

With the assistance of the government, defendant secured space in a building known as the Dohrmann Commercial building, which was suitable for its purposes, and which entailed a net monthly rental of $1,660, after crediting sub-rentals received from the Office of Defense Transportation, which became sub-tenant of defendant in a portion of the said premises.

Defendant offered to prove that the expense necessarily involved in moving and installing its stock of merchandise and equipment to and in its new home amounted to the sum of $35,401. Defendant contends that it was damaged by the taking in said amount and that it should be awarded compensation in said amount in addition to the rental value.

■ It is well settled that the standard or yard stick for the admeasurement of damages for the taking of private property is the fair market value of the property or interest taken. Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L. Ed. 1236; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1.

■ A long line of authority supports the view that expenses of removing plants or equipment or personal property are not compensable. Olson v. United States, supra; Joslin Mfg. Co. v. City of Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Mitchell v. United States, 267 U. S. 341, 45 S.Ct. 293, 69 L.Ed. 644; United States ex rel. T. V. A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; Potomac Electric Power Co. v. United States, 66 App.D.C. 77, 85 F.2d 243.

This rule has been specifically applied in cases of the taking of leasehold interests or temporary use and occupancy of property. Gershon Bros. Co. v. United States, 5 Cir., 284 F. 849; United States v. Entire Fifth Floor in Butterick Bldg., D.C., 54 F.Supp. 258; United States v. Improved Premises, D.C., 54 F.Supp. 469.

In the case of Pacific Live Stock Co. v. Warm Springs Irr. Dist., 9 Cir., 270 F. 555, 559, the Court, in a case involving the taking of land upon which a crop of hay was being raised, after reaffirming the general rule that expense arising from the removal of property does not constitute an item of allowable damage, said: "We do not assert that the rule so stated is a hard and fast one. There may be circumstances under which the expense of removing personal property from land which is sought to be condemned is a legitimate item of damages. But the damages here sought to be recovered on account of the hay were too conjectural and uncertain to form the basis of recovery at the time of the judgment of condemnation." Assuming that the dictum of the Circuit Court of Appeals might properly be followed, I do not find that this is a case, where under all of the circumstances, any departure from the accepted rule is justified.

■ Defendant relies upon the case of General Motors Co. v. United States, 7 Cir., 140 F.2d 873. There the court, in reversing a judgment of the District Court for the Northern District of Illinois, held that expenses of removing property of a condemnee were allowable as a part of the fair value of the use or interest condemned. It appears to be contrary to accepted authority. Furthermore, it does not seem to me to be logical to allow such special damage as a part of rental value. The concept of market value, judicially applied, attaches to property, never to the person of the owner. Monongahela Navigation Co. v. United States, 148 U.S. 312, 326, 13 S.Ct. 622, 37 L.Ed. 463. If personal damage or detriment were intruded, the test of fair market value would become completely unstandardized and illusory.

■ Accordingly, I hold that the special damage prayed for by the defendant is not allowable.

Judgment accordingly.