## UNITED STATES *v.* GENERAL MOTORS CORP.

No. 76. Argued November 16, 17, 1944.—Decided January 8, 1945.

374

*Mr. Vernon L. Wilkinson,* with whom *Solicitor General Fahy, Assistant Attorney General Littell,* and *Miss Wilma C. Martin* were on the brief, for the United States.

*Mr. John Thomas Smith* for respondent.

*Mr. Philip S. Ehrlich* filed a brief on behalf of the Zellerbach Paper Co., as *amicus curiae,* supporting respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case is one of first impression in this court. It presents a question on which the decisions of federal courts are in conflict.[1] The problem involved is the ascertainment of the just compensation required by the Fifth Amendment of the Constitution, where, in the exercise of

---

[1] Compare with the decision below, 140 F. 2d 873, *Gershon Bros. Co.* v. *United States,* 284 F. 849; *National Laboratory & Supply Co.* v. *United States,* 275 F. 218; *United States* v. *Entire Fifth Floor,* 54 F. Supp. 258; *United States* v. *Improved Premises,* 54 F. Supp. 469; *United States* v. *Certain Parcels of Land,* 54 F. Supp. 561; *United States* v. *0.64 Acres of Land,* 54 F. Supp. 562; *United States* v. *Building Known as 651 Brannan Street,* 55 F. Supp. 667; *Wm. Wrigley Jr. Co.* v. *United States,* 75 Ct. Cls. 569; *Howard Co.* v. *United States,* 81 Ct. Cls. 646.

the power of eminent domain, temporary occupancy of a portion of a leased building is taken from a tenant who holds under a long term lease.

Section 201 of Tit. II of the Second War Powers Act of March 27, 1942,[2] provides, in part, that the Secretary of War may cause proceedings to be instituted, in any court having jurisdiction, to acquire, by condemnation, any real property, temporary use thereof, or other interest therein which shall be deemed necessary for military or other war purposes. The Act provides further that, on or after the filing of the condemnation petition, immediate possession may be taken and the property may be occupied, used, or improved.

In 1928 the respondent leased a one-story warehouse building in Chicago for a term of twenty years, for the storage and distribution of automobile parts, and fitted the premises for this use. In 1942 the United States became subtenants of a portion of the floor space in the building. There remained in the possession of the respondent some 93,000 square feet. In the spring of 1942 the Secretary of War requested the Attorney General to institute proceedings for condemnation of the occupancy of the remaining space for a term ending June 30, 1943. Pursuant to the request, the United States, June 8, 1942, filed a petition in the District Court for an order condemning such temporary use and granting the Government the right of immediate possession, use, and improvement for military purposes. On the same day the court entered an order declaring the property condemned for a term ending June 30, 1943, and granting the United States the right of immediate possession. The order was served on the respondent and shortly thereafter it began removing its personal property from the area and dismantling and demolishing bins and fixtures, so that the space was available for government use by June 19.

---

[2] c. 199, 56 Stat. 176, 177, 50 U. S. C. App. § 632.

At the trial for the ascertainment of the compensation due the respondent, the attorney for the Government, after proving the authority for the taking, called a real estate expert who gave his opinion that the fair rental value of the space was 35 cents per year per square foot. The Government then rested.

The respondent called expert witnesses who testified that, in their opinion, the fair rental value was 43 cents per square foot, and a witness was permitted to testify that the rent paid by the respondent to its landlord had varied during the years 1940 to 1942, inclusive, from 41.9 to 43.24 cents.

The respondent then offered to prove various items of cost caused by removal of the contents. These consisted, *inter alia*, of salaries of employes engaged in the work, compensation due employes put out of work by the removal, wages of janitors and watchmen for the protection of the building during the moving, the cost of shipping the contents of the building to other points, compensation to executives and employes whose time was required in connection with the moving of the property, freight and haulage charges, rental of storage space for articles moved out, the value of the bin equipment destroyed and the estimated original cost of the installation of fixed equipment completely lost as a result of the dismantling of the area. The court sustained an objection to the offer. The jury awarded compensation in a lump sum at a rate of approximately 40 cents per square foot for the term of one year.[3]

---

[3] After judgment had been entered on the verdicts, the court, on the Government's motion, opened the judgment and permitted the Government to amend its petition for condemnation to describe the interest taken as "a term for years . . . expiring June 30, 1943, renewable for additional yearly periods thereafter . . . at the election of the Secretary of War," on specified notice of intent so to renew. The court then entered a new judgment awarding the amount of the verdict to respondent and retaining jurisdiction for the ascertain-

The respondent appealed to the Circuit Court of Appeals, assigning as error the refusal of its offer of proof. That court might have sustained the District Court's ruling on the ground that respondent was not entitled to prove certain of the expenditures and losses in question as independent items of damages additional to the value of the interest taken by condemnation. The court, however, considering substance rather than form, by a vote of 2 to 1, reversed the judgment, holding that items of actual loss which were the direct and necessary result of the respondent's exclusion from the leased area might be proved, not as independent items but as elements to be considered in arriving at the sum which would be just compensation for the interest which the Government condemned. The cause was remanded for trial in accordance with the ruling of the Circuit Court of Appeals. We think we should review that ruling inasmuch as it is fundamental to the further conduct of the case. The correctness of the decision of the court below depends upon the scope and meaning of the constitutional provision: "nor shall private property be taken for public use, without just compensation," which conditions the otherwise unrestrained power of the sovereign to expropriate, without compensation, whatever it needs.

The critical terms are "property," "taken" and "just compensation." It is conceivable that the first was used in its vulgar and untechnical sense of the physical thing with respect to which the citizen exercises rights recognized by law. On the other hand, it may have been employed

---

ment of further compensation for damage to the property, if any, beyond ordinary wear and tear, due to the Government's occupancy. We do not understand that these facts alter the question before us. The case now presented involves only the original taking for one year. If, on remand, the case be treated as involving the Government's option of renewal, the additional value of that interest must be included in the compensation awarded. We express no opinion as to the Government's power to condemn service, such as the furnishing of heat and light.

in a more accurate sense to denote the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it. In point of fact, the construction given the phrase has been the latter.[4] When the sovereign exercises the power of eminent domain it substitutes itself in relation to the physical thing in question in place of him who formerly bore the relation to that thing, which we denominate ownership. In other words, it deals with what lawyers term the individual's "interest" in the thing in question. That interest may comprise the group of rights for which the shorthand term is "a fee simple" or it may be the interest known as an "estate or tenancy for years," as in the present instance. The constitutional provision is addressed to every sort of interest the citizen may possess.

In its primary meaning, the term "taken" would seem to signify something more than destruction, for it might well be claimed that one does not take what he destroys. But the construction of the phrase has not been so narrow. The courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking.[5]

But it is to be observed that whether the sovereign substitutes itself as occupant in place of the former owner, or destroys all his existing rights in the subject matter, the Fifth Amendment concerns itself solely with the "property," i. e., with the owner's relation as such to the physical thing and not with other collateral interests which may be incident to his ownership.

---

[4] Lewis, Eminent Domain, 3d Ed., §§ 63, 64.

[5] See, e. g., *United States* v. *Welch*, 217 U. S. 333; *Richards* v. *Washington Terminal Co.*, 233 U. S. 546.

In the light of these principles it has been held that the compensation to be paid is the value of the interest taken. Only in the sense that he is to receive such value is it true that the owner must be put in as good position pecuniarily as if his property had not been taken. In the ordinary case, for want of a better standard, market value, so called, is the criterion of that value. In some cases this criterion cannot be used either because the interest condemned has no market value or because, in the circumstances, market value furnishes an inappropriate measure of actual value.

In the trial of this case the parties presented evidence of the market value of the occupancy of bare floor space for the term taken. The respondent's offer to prove additional items for which it claimed compensation was overruled. The award was therefore limited to the market value of the occupancy of a vacant building. The question is whether any other element of value inhered in the interest taken.

The sovereign ordinarily takes the fee. The rule in such a case is that compensation for that interest does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of good-will which inheres in the location of the land, or other like consequential losses which would ensue the sale of the property to someone other than the sovereign. No doubt all these elements would be considered by an owner in determining whether, and at what price, to sell. No doubt, therefore, if the owner is to be made whole for the loss consequent on the sovereign's seizure of his property, these elements should properly be considered. But the courts have generally held that they are not to be reckoned as part of the compensation for the fee taken by the Government.[6] We are not to be taken as departing

---

[6] *Bothwell* v. *United States,* 254 U. S. 231; *Mitchell* v. *United States,* 267 U. S. 341; *Mullen Benevolent Corp.* v. *United States,* 290 U. S. 89; Orgel, Valuation under Eminent Domain, Chap. V, pp. 220–252.

from the rule they have laid down, which we think sound. Even where state constitutions command that compensation be made for property "taken or damaged" for public use, as many do, it has generally been held that that which is taken or damaged is the group of rights which the so-called owner exercises in his dominion of the physical thing, and that damage to those rights of ownership does not include losses to his business or other consequential damage.[7]

The question posed in this case then is, shall a different measure of compensation apply where that which is taken is a right of temporary occupancy of a building equipped for the condemnee's business, filled with his commodities, and presumably to be reoccupied and used, as before, to the end of the lease term on the termination of the Government's use? The right to occupy, for a day, a month, a year, or a series of years, in and of itself and without reference to the actual use, needs, or collateral arrangements of the occupier, has a value. The value of that interest is affected, of course, by the kind of building to be occupied, by its location, by its susceptibility to various uses, by its conveniences, or the reverse, and by many other factors which go to set the value of the occupancy. These were taken into consideration in fixing the market value of the floor space taken, as if that space were bare and in the market for rent.

While, as has been said, the Government's power to take for a short period, and to demand possession of the space taken freed of all equipment or personal property therein, cannot be denied, three questions emerge which are not presented when what is taken is a fee interest in land. They are: 1. Is the long-term rental value the sole measure of the value of such short-term occupancy carved out of the long term? 2. If the taking necessitates the removal

---

[7] Orgel, *op. cit.*, p. 253.

of personal property stored in the building in conformity to the normal use of such a building, is the necessary expense of the removal to be considered in computing compensation? 3. If a tenant's equipment and fixtures are taken or destroyed, or reduced in value, by the Government's action, must it compensate for the value thus taken or destroyed in addition to paying the rental value of the occupancy?

1. If the Government need only pay the long-term rental of an empty building for a temporary taking from the long-term tenant a way will have been found to defeat the Fifth Amendment's mandate for just compensation in all condemnations except those in which the contemplated public use requires the taking of the fee simple title. In any case where the Government may need private property, it can devise its condemnation so as to specify a term of a day, a month, or a year, with optional contingent renewal for indefinite periods, and with the certainty that it need pay the owner only the long-term rental rate of an unoccupied building for the short term period, if the premises are already under lease or, if not, then a market rental for whatever minimum term it may choose to select, fixed according to the usual modes of arriving at rental rates. And this, though the owner may be damaged by the ouster ten, a score, or perhaps a hundred times the amount found due him as "fair rental value." In the present case the respondent offered to prove that the actual expense of moving its property exceeded $46,000, and the loss due to destruction and removal of fixtures and fixed equipment exceeded $31,000, in addition to its continuing liability to pay rent for the year of approximately $40,000; whereas the award was $38,597.86. If such a result be sustained we can see no limit to utilization of such a device; and, if there is none, the Amendment's guaranty becomes, not one of just compensation for what is taken, but an instrument of confiscation fictionalizing "just compensation"

into some such concept as the common law idea of a peppercorn in the law of seizin or the later one of "value received" in that of contractual consideration. If the value to be paid in a case like the present is confined, as matter of law, to the long-term rental of bare space, the owner will not be secure, either in his rights of property, or in his right to just compensation as a substitute for it, when the Government takes it for the use and benefit of all. Here the use of a warehouse for a short time was taken. The property might have been the General Motors factory. Or several plants. Or a modest store or home. Whatever of property the citizen has the Government may take. When it takes the property, that is, the fee, the lease, whatever he may own, terminating altogether his interest, under the established law it must pay him for what is taken, not more; and he must stand whatever indirect or remote injuries are properly comprehended within the meaning of "consequential damage" as that conception has been defined in such cases. Even so the consequences often are harsh. For these whatever remedy may exist lies with Congress.

It is altogether another matter when the Government does not take his entire interest, but by the form of its proceeding chops it into bits, of which it takes only what it wants, however few or minute, and leaves him holding the remainder, which may then be altogether useless to him, refusing to pay more than the "market rental value" for the use of the chips so cut off. This is neither the "taking" nor the "just compensation" the Fifth Amendment contemplates. The value of such an occupancy is to be ascertained, not by treating what is taken as an empty warehouse to be leased for a long term, but what would be the market rental value of such a building on a lease by the long-term tenant to the temporary occupier. The case should be retried on this principle. In so ruling we do not suggest that the long-term rental value may not be shown

as bearing on the market rental value of the temporary occupancy taken. It may be evidence of the value of what is taken but it is not the criterion of value in such a case as this.

2. Some of the elements which would certainly and directly affect the market price agreed upon by a tenant and a sublessee in such an extraordinary and unusual transaction would be the reasonable cost of moving out the property stored and preparing the space for occupancy by the subtenant. That cost would include labor, materials, and transportation. And it might also include the storage of goods against their sale or the cost of their return to the leased premises. Such items may be proved, not as independent items of damage but to aid in the determination of what would be the usual—the market—price which would be asked and paid for such temporary occupancy of the building then in use under a long-term lease. The respondent offered detailed proof of amounts actually and necessarily paid for these purposes. We think that the proof should have been received for the purpose and with the limitation indicated.[8] Proof of such costs as affecting market value is to be distinguished from proof of value peculiar to the respondent, or the value of good-will or of injury to the business of the respondent which, in this case, as in the case of the condemnation of a fee, must be excluded from the reckoning.

3. For fixtures and permanent equipment destroyed or depreciated in value by the taking, the respondent is entitled to compensation. An owner's rights in these are no

---

[8] *Patterson* v. *Boston,* 23 Pick. (Mass.) 425; *Getz* v. *Philadelphia & Reading R. Co.,* 105 Pa. 547; *Philadelphia & Reading R. Co.* v. *Getz,* 113 Pa. 214, 6 A. 356; *McMillin Printing Co.* v. *Pittsburgh, C. & W. R. Co.,* 216 Pa. 504, 65 A. 1091; *North Coast R. Co.* v. *Kraft Co.,* 63 Wash. 250, 115 P. 97; *National Laboratory & Supply Co.* v. *United States,* 275 F. 218.

less property within the meaning of the Fifth Amendment than his rights in land and the structures thereon erected. And it matters not whether they were taken over by the Government or destroyed, since, as has been said, destruction is tantamount to taking.[9] This is true whether the fixtures and equipment would be considered such as between vendor and vendee,[10] or as a tenant's trade fixtures.[11] In respect of them, the tenant whose occupancy is taken is entitled to compensation for destruction, damage or depreciation in value.[12] And since they are property distinct from the right of occupancy such compensation should be awarded not as part of but in addition to the value of the occupancy as such.

The judgment of the Circuit Court of Appeals, as modified by this opinion, is

*Affirmed.*

The CHIEF JUSTICE, MR. JUSTICE FRANKFURTER and MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, concurring in part.

I agree that respondent is entitled to compensation for fixtures and permanent equipment destroyed or depreciated in value by the taking. I likewise agree that re-

[9] *Supra,* Note 5.

[10] *Jackson* v. *New York,* 213 N. Y. 34, 106 N. E. 758.

[11] *Matter of City of New York,* 66 Misc. Rep. 488, 122 N. Y. S. 321; *Matter of Wilcox,* 165 App. Div. 197, 151 N. Y. S. 141; *Bales v. Wichita Midland Valley R. Co.,* 92 Kan. 771, 141 P. 1009; *Matter of City of New York,* 219 App. Div. 27, 219 N. Y. S. 353; *Matter of City of New York,* 256 N. Y. 236, 176 N. E. 377; *In re Widening of Gratiot Ave.,* 294 Mich. 569, 293 N. W. 755; cf. *Pause* v. *Atlanta,* 98 Ga. 92, 26 S. E. 489.

[12] *United States* v. *Seagren,* 50 F. 2d 333; *Matter of City of New York,* 118 App. Div. 865; 103 N. Y. S. 908; *St. Louis* v. *St. Louis, I. M. & S. R. Co.,* 266 Mo. 694, 182 S. W. 750; *People* v. *Ganahl Lumber Co.,* 10 Cal. 2d 501, 75 P. 2d 1067; and cases cited in Note 11.

spondent is entitled to a further increase in its award. The award granted is less than the rental which it is under a continuing obligation to pay the lessor. The United States is occupying the premises and paying about 40¢ a square foot while respondent continues to pay 42¢ to the landlord. In these special circumstances it is difficult to see how a lessee receives that just compensation to which he is entitled unless the United States pays the full rental. It would indeed be a novel rule of law which allowed the Government to oust a person from a portion of his leasehold, occupy the premises, but pay only a part of the rent, leaving the balance to be paid by him who though ousted holds the balance of the term. But I do not believe we should allow the cost of removing personal property from the premises to be reflected in the award. If this were a fee interest which was being condemned, we would exclude all such expenses from the award. Consequential losses or injuries resulting from the taking are not compensable under the Fifth Amendment. *Mitchell* v. *United States,* 267 U. S. 341; *United States* v. *Miller,* 317 U. S. 369, 376; *United States* v. *Powelson,* 319 U. S. 266, 281–283. It takes an Act of Congress to make them so. We should adhere to that rule. If we allow consequential damages to be shown here, I do not see how we can refuse such an offer of proof when a 10-year lease, a 99-year lease, or a fee interest is condemned. If cost of moving is relevant to market price in one case, I cannot say it is irrelevant in the other. And if one type of consequential damage is relevant to market price, I do not see why almost any type may not be. If we allow the offer of proof in the present case, the result will be to let consequential damages in under a new guise. If we take that step we demonstrate that hard cases do indeed make bad law. We give the Constitution an interpretation which promises swollen verdicts which no Act of Congress can cure.

Mr. Justice Black joins in this opinion.