## UNITED STATES v. 40,438 SQUARE FEET OF LAND IN BOSTON et al.

Civ. No. 6883.

District Court, D. Massachusetts.

June 6, 1946.

Edmund J. Brandon, U. S. Atty., and Philip A. O'Connell, Sp. Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

George R. Blodgett, William J. Hession, and Herrick, Smith, Donald, Farley & Ketchum, all of Boston, Mass., for defendant.

Frank J. Murray, Corporation Counsel, of Boston, Mass., for City of Boston and Collector of Taxes, City of Boston.

HEALEY, District Judge.

The petitioner, Backbayton Realty Corporation, has filed a motion to have the claim and appearance of the respondent, New England Aircraft School, Inc., in this condemnation proceeding stricken from the docket.

The petitioner, a New York corporation, is the owner of the fee in the premises in question. The property is subject to a trust mortgage which is held by a corporate trustee to secure an issue of bonds of the Burlington Realty Trust, the former owner of the record title. The present trustee under the trust mortgage is the Second National Bank of Boston, which was appointed trustee on August 9, 1945. At all material times prior thereto, the Chemical Bank and Trust Company of New York was the trustee.

The original indenture of first mortgage is dated January 1, 1928, and the supplemental indenture, amending the original indenture, under a plan of reorganization approved by the District Court of the United States for the Southern District of New York, is dated October 1, 1935. Article Fourteenth of the supplemental indenture provides that all rentals on the property are to be paid directly by the lessee to the trustee. Article Fourteenth provides that the mortgagor shall continue in possession of the mortgaged premises with power to manage, operate and lease the property. Article Nineteenth, subparagraph (m) provides that in the event of any taking, the proceeds shall be forthwith deposited with the trustee.

By indenture of lease dated January 10, 1942, the Backbayton Realty Corporation leased to the New England Aircraft School, Inc., the whole premises known as numbers 21–27 Burlington Avenue, and 20–26 Overland Street in the city of Boston, Massachusetts, the premises in question here, for a term of years ending September 30, 1945, at an annual rental of $45,000.

The indenture of lease contained the following paragraph: "Provided always that in case the said premises or more than 50% of the total floor space thereof, or the whole of the building of which they are a part, shall be taken for any street or other public use, or shall be destroyed or damaged by fire or other unavoidable casualty, or by the action of the city or other authorities, or shall receive any direct or consequential damage for which the Lessor or the Lessee shall be entitled to compensation by reason of anything lawfully done in pursuance of any public authority, after the execution hereof and before the expiration of said term, then this lease and the said term shall terminate at the election of the Lessor, and such election may be made in case of any such taking, notwithstanding the entire interest of the Lessor

may have been divested by such taking, and if it shall not so elect, then in case of any such taking or destruction of, or damage to, the demised premises, rendering the same or any part there unfit for use and occupation, a just proportion of the rent hereinbefore reserved, according to the nature and extent of the injury sustained by the demised premises, shall be suspended or abated until the demised premises, or in case of such taking, what may remain thereof, shall have been put in proper condition for use and occupation."

On March 1, 1944, the United States Attorney at Boston, by the direction of the Attorney General of the United States at the request of the Acting Secretary of the Navy, filed in this court a petition for condemnation of the whole premises for a term for years ending June 30, 1944, under the Second War Powers Act of 1942, as amended, 50 U.S.C.A.Appendix, § 632. On the same day, an order was entered by the court granting to the government immediate possession of the premises in accordance with the prayer of the petition. On March 3, 1944, the parties were served with notice of this order.

A letter dated March 4, 1944, signed by H. C. Ottiwell as trust officer of the Chemical Bank and Trust Company of New York, was sent to the president of the New England Aircraft School, Inc., acknowledging receipt on March 3, 1944 by the trustee of the lessee's check for rent for the month of March, 1944, and stating that the check was not being put through for collection at that time because, prior to receiving it, the trustee had been informed that the lease had been canceled.

Under date of March 7, 1944, a letter from H. C. Ottiwell was sent to the respondent, in which he stated that, having been informed that Backbayton Realty Corporation had canceled the lease, they were returning the lessee's check.

By a letter dated March 7, 1944, the New England Aircraft School, Inc., was notified by a Mr. Griffin, who signed as agent for the Backbayton Realty Corporation, that the lessors had elected to terminate the lease as of March 1, 1944, in accordance with the aforementioned provision of the lease.

The petitioner claims that by its election to terminate the lease, the respondent is not entitled to recover any damages in the condemnation proceeding, and that its answer and appearance in this proceeding should be stricken from the docket.

The respondent argues that the motion to strike should be denied for the following reasons:

1. There has been no valid taking of the premises for a public use under Act of Congress approved March 27, 1942, known as Public Law 507, 77th Congress, 50 U.S.C.A. Appendix, § 631 et seq., and the Act approved June 26, 1943, Public Law 92, 78th Congress, 57 Stat. 197, nor has there been anything lawfully done in pursuance of any public authority that would entitle the lessor to exercise its option to terminate the lease.

2. Backbayton Realty Corporation did not properly terminate the lease to New England Aircraft School, Inc., and therefore, could not and did not divest the New England Aircraft School, Inc., of any of its rights thereunder.

3. The United States Government took possession of the premises in question under consent to peaceful possession obtained from Backbayton Realty Corporation and the New England Aircraft School, Inc., and such possession was taken prior to the institution of the condemnation proceedings, and therefore, the condemnation proceedings were of no force or effect.

4. If the court ruled that there was a taking for a public use and a valid termination in accordance with the terms of the lease, then New England Aircraft School, Inc., submits that such taking and termination was a direct result of conspiracy and collusion between Backbayton Realty Corporation and the agent of the United States Government, and such collusion and conspiracy should operate as an effective bar to any relief sought by the moving party.

On February 25, 1946, a hearing was held on this motion. A stipulation of facts, affidavits and certain exhibits have been filed by the parties, and a memorandum of facts has been filed by the office of the United States Attorney at Boston.

■ The issues raised by the respondent as to the propriety of the acts of the agent

of the Backbayton Realty Corporation or of the acts of the agent of the United States Navy Department, although they might possibly constitute bases for other actions by the respondent, are not material to a decision of this motion in a condemnation proceeding.

■ The argument of respondent that the United States Government took possession of the premises in question under consent to peaceful possession obtained from Backbayton Realty Corporation and New England Aircraft School, Inc., and that such possession was taken prior to the institution of the condemnation proceedings, and that therefore the condemnation proceedings were of no force and effect, cannot be availed of by the respondent in this proceeding. See United States v. 6.74 Acres of Land in Dade County, Florida, 5 Cir., 148 F.2d 618; United States v. 243.22 Acres of Land, 2 Cir., 129 F.2d 678, at page 683; United States v. Certain Parcels of Land, etc., D.C., 55 F.Supp. 257, at page 262.

The fundamental issue arising on this motion is whether or not the New England Aircraft School, Inc., had an interest in the property condemned by the Government, for the taking of which it is entitled to compensation.

The questions to be answered in determining whether or not the respondent had such an interest are as follows:

1. Was there a taking of the premises by the Government which would enable the petitioner to terminate its lease of those premises pursuant to the provisions of the lease? If so:

2. Did the petitioner effectively terminate the lease?

I construe the provision of the lease quoted supra to give the lessor the right to terminate the lease whenever, due to the happening of any of the events stated therein, the lessee is deprived of the use and occupancy of more than 50% of the total floor space of the premises as a result of any taking or unavoidable casualty.

■ By the order for immediate possession granted by the court on March 1, 1944, the use and occupancy of the whole premises was granted to the United States. The right of anyone else, including the respondent, to use and occupy the premises was terminated and the premises were taken for public use by the United States. United States v. General Motors Corporation, 323 U.S. 373, at page 378, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390; United States v. Meyer et al., 7 Cir., 113 F.2d 387, at page 393. Consequently, the right of the petitioner to terminate the lease became exercisable on March 1, 1944. Cf. United States v. 8,286 Square Feet of Space, etc., D.C., 61 F.Supp. 737, at page 744.

■ There having been a taking of the whole premises, the lessee cannot share in the condemnation award if the lessor effectively exercised its right of election to terminate the lease. United States v. 3.5 Acres of Land, D.C., 57 F.Supp. 548.

A letter dated March 7, 1944 on stationery of the Burlington Realty Trust was sent to the New England Aircraft School, Inc. This letter, signed "Backbayton Realty Corporation by D. L. Griffin, Agent", was as follows: "As stated in Boston last week, Backbayton Realty Corporation has elected to terminate its lease with New England Aircraft School, Inc., as of March 1, 1944 * * *."

The petitioner in its brief argues that "by the letter dated March 7, 1944, the Burlington Realty Corporation in writing elected to terminate the lease * * *." The respondent argues that this letter constituted merely the report of an alleged fact, rather than an election to terminate the lease. They claim that the Board of Directors of the Backbayton Realty Corporation and the trustees under the supplemental trust indenture were the only ones who could authorize the execution of the lease, and therefore, were the only persons who could elect to terminate it. They state that it has never been contended by the Backbayton Realty Corporation that the Board of Directors of the corporation and the trustees authorized the termination of the lease by the agent Griffin. On this point the petitioner argues that only the principal can question the authority of an agent, and further, that the fact that the rental check was returned each month to the lessee by

the trustee conclusively indicates the approval of Mr. Griffin's letter by both Backbayton Realty Corporation and the trustee.

In my opinion, the letter signed by Griffin as agent and bearing the date of March 7, 1944, was by its terms not "an election" by the lessor, but merely "a notice" that the lessor had previously made "an election".

By its terms the lease was terminable at the election of the lessor on the taking of the premises by the government. Under the circumstances, the lessee should be given a notice of such an election. However, the respondent lessee, having denied that the petitioner ever made a valid election to terminate the lease, the petitioner, as the moving party here, has the burden of showing by competent evidence, that a valid election was made by it or on its behalf by a properly authorized agent. Cf. Mizner v. Munroe, 76 Mass. 290, 292, 10 Gray 290, 292.

The petitioner has failed to show any vote of its Board of Directors or any act by a duly authorized officer of the corporation authorizing the making of this election by Griffin or any one else or that the Board of Directors or any qualified officer of the corporation actually made such an election. The only evidence that they have presented on this point is the letter of the agent Griffin, self-serving in nature, and the fact that the trustees returned the rental checks because they had been informed by some one that the petitioner had elected to terminate the lease. In my opinion, this is not sufficient evidence, in these circumstances, to show that the corporation had made an election to terminate the lease.

Even though the letter of the agent Griffin were considered to be the exercise by the petitioner of its right of election under the terms of the lease, it could not, on the facts shown here, be the means of effectively terminating the lease. The petitioner has failed to show that Griffin had any authority to act for the corporation in such a capacity. Cf. McClung v. McPherson, 47 Or. 73, 81 P. 567, 571, 82 P. 13.

There is no presumption that one purporting to act for a principal is authorized to do so. Collins v. Streitz, 9 Cir., 95 F.2d 430, 436; Wigmore on Evidence, 3d Ed., § 2520 (n. 7); Alpert v. Polonsky, Sup., 193 N.Y.S. 53. The petitioner has failed to introduce sufficient evidence from which the authority of Griffin to make an election could be found to exist.

Nor does it suffice for the petitioner to allege that it has since ratified the act of Griffin. Here the rights of a third person have intervened between the unauthorized act of the agent and the alleged ratification of that act by the principal. In such a case it would be unjust to allow the principal to ratify the act of the agent at a later date if beneficial to it, or to repudiate it if it proved detrimental to its interest. In such a situation, a subsequent ratification of an act performed by an unauthorized agent is not valid. Mechem on Agency, § 528; Story on Agency, §§ 246, 247; Jones on Landlord and Tenant, § 265.

The motion to strike is, therefore, denied at this time without prejudice.