**UNITED STATES v. 5.42 ACRES OF LAND, MORE OR LESS, SITUATE IN ATLANTIC CITY, ATLANTIC COUNTY, N. J., et al. (ICE–CAPADES, Inc., Intervenor).**

No. 9878.

United States Court of Appeals, Third Circuit.

Argued Oct. 13, 1949.

Decided June 1, 1950.

788

W. Louis Bossle, Camden, N. J. (Walter S. Keown, Camden, N. J., Andrew E. Sheridan, Pittsburgh, Pa., attorneys for Ice-Capades, Inc., on the brief), for appellant.

John C. Harrington, Washington, D. C. (A. Devitt Vanech, Assistant Attorney General, Alfred E. Modarelli, United States Attorney, Newark, N. J., Sidney Kaplan, Special Assistant to the Attorney General, Roger P. Marquis, Attorneys, Department of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS, Chief Judge, KALODNER Circuit Judge, and FEE, District Judge.

BIGGS, Chief Judge.

During the years 1941 and 1942 Atlantic City, New Jersey, owned Convention Hall, situated on the Boardwalk. The City rented Convention Hall to organizations wishing to use it. In the summer of 1941 Ice-Capades, Inc. had occupied the main hall of Convention Hall under a short-term lease from the City. On March 10, 1942 the City and Ice-Capades entered into another lease whereby the City again rented the main hall to Ice-Capades for the period from July 24 to September 6, 1942 at a specified rental of 36% of the gross admissions to be received from the carnivals that Ice-Capades planned to present there. It was agreed that the City should "* * * make every reasonable effort at all times to give good ice for use of rehearsals and presentation of shows". Storage and office space were also included in the arrangements. Other provisions of the agreement need not be recited here. About the end of June, 1942 Ice-Capades began to make use of the storage and office facilities in the Hall.

On July 16, 1942 the United States filed a petition in condemnation [1] in the court below seeking immediate possession of Convention Hall, less certain rooms not here pertinent. The United States was granted possession on July 16, 1942 and the United States Army moved into the Hall and remained in possession for the entire period covered by Ice-Capades' lease. The United States took Ice-Capades' entire lease-hold interest. Nothing was left. See United States v. Westinghouse Elec. & Mfg. Co., 70 S.Ct. 644,[2] and the discussion therein of United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390, and United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729. Ice-Capades moved its performers to Hershey, Pennsylvania and held its performances there.

On July 31 Ice-Capades entered an appearance in the pending suit. Thereafter, the United States and the City arrived at an agreement [3] under which the United States leased the Hall for a period from July 1, 1942 to June 30, 1943 at an annual rental of $75,000. The United States then moved to dismiss the petition for condemnation and sought the return of its deposit. Ice-Capades filed a petition, *sub* the main proceeding, alleging a lease-hold interest, seeking damages for its taking, and requesting the appointment of commissioners to determine the amount of just compensation due to it. The commissioners awarded Ice-Capades $12,000. Both the United States and Ice-Capades appealed this award to the court below where a trial was held with a jury. See 50 U.S.C.A. § 171, and N.J.S.A. 20:1–16, 22. The jury, according to a docket entry and the briefs of the parties, return-

---

1. This is the main action at bar, being Miscellaneous No. 489a in the court below.

2. Decided April 17, 1950.

3. Neither the agreement nor the lease be-

tween the City and the United States was made part of the record because it was stipulated by counsel for the parties that any interest possessed by Ice-Capades was not affected by the agreement or the lease.

ed a verdict of "no cause of action". We will treat this as a verdict of "no damages", assuming it to have been molded into that proper form by the learned District Judge.[4] Ice-Capades has appealed.

■ At the trial the learned District Judge held that the value of Ice-Capades' lease for the purpose of condemnation was its worth on a fair and open market, not its value to Ice-Capades or to the United States. See United States v. Toronto, Hamilton & Buffalo Nav. Co., 338 U.S. 396, 402, 70 S.Ct. 217, and United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L. Ed. 336, 147 A.L.R. 55. It followed, naturally, that the court did not allow evidence to be introduced by Ice-Capades to establish the value of the Hall to it as a place for holding rehearsals. This evidence was properly excluded. A persuasive analogy in support of this ruling is suggested by words employed by Mr. Justice Frankfurter in Kimball Laundry Co. v. United States, 338 U.S. 1, 5 and 6, 69 S.Ct. 1434, 93 L.Ed. 1765, 7 A.L.R.2d 1280. See also Omnia Commercial Co. v. United States, 261 U.S. 502, 508, 509, 43 S.Ct. 437, 67 L.Ed. 773. But the learned trial judge did permit evidence to be introduced by Ice-Capades which was intended to demonstrate an increase in the market value of the lease as of July 16, 1942 (the day of taking) because matinees, if held, would have been attended by members of the Armed Forces who had come to Atlantic City in increasing numbers after March 10. This testimony, as presented, was somewhat remote from the issue and obviously was deemed to be of little weight by the jury.

■ Ice-Capades also offered testimony as to expenses incurred by it in moving into and out of the Hall. This was inadmissible under the rule laid down in United States v. Petty Motors Co., 327 U. S. 372, 378, 66 S.Ct. 596, 90 L.Ed. 729, and was rejected by the court below. Evidence as to the cost of printing programs by Ice-Capades also was not admitted and this ruling finds obvious support in the Petty case. The court permitted testimony to be given, however, as to the sums expended by Ice-Capades in advertising the carnival in Atlantic Cty. The question as to whether or not such evidence was properly admissible is a difficult one but in view of the jury's verdict we need not discuss it.

■ The court's charge followed in substance the legal principles which governed its rulings on the evidence. There was no substantial deviation. Ice-Capades may not complain of the fairness of the charge. Any error therein was to the advantage of the appellant. The court properly stressed, as the governing principle of the case, the fair market value of the lease at the time of the taking.

On appeal here Ice-Capades contends, in substance, that the court below erred in treating the lease as having no special value, i. e., no value other than fair market value, and, conversely, in laying down fair market value as the test. But there was undisputed evidence as to the market value of the lease as of March 10, 1942 when the agreement was made by the City and Ice-Capades, viz., 36% of the gross admissions. It is clear that a calculation of the value of the lease as of July 16, 1942 (the day of taking) could be and was based on this evidence. It should be pointed out also that there was testimony that the value of the lease was the same on March 10 and July 16, 1942, and also some evidence, offered by the United States, that the value of the lease had substantially depreciated by July 16, 1942. The jury in arriving at its verdict of *no damages* was not wide of the mark.

■ Exceptional circumstances may be considered in arriving at just compensation under the Fifth Amendment for an interest taken by condemnation. See the Miller and Toronto cases and Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206. We think it is settled, however, that the compensation for property condemned for public use is to be determined by market value where such a standard is readily available. See the Petty case and Kinter v. United States, 3 Cir., 156 F.2d 5, 7, 172 A.L.R. 232. Where market value for an interest taken by condemnation is easily ascertainable the

---

4. No question is raised by either party as to the form of the verdict.

jury should not be permitted to speculate as to the possible impact of other conceivable factors on the amount of "just compensation". This must be the rule when items said to show a special value in the interest taken are as remote as in the instant case. Emphasis is laid on the fact that Ice-Capades makes no assertion that the lease was not fair in its terms, was not arrived at by arm's length bargaining, or did not adequately represent market value when it was executed. As was said by the late Judge O'Connell in the Kinter case, 156 F. 2d at page 7, in stating the governing rule, "* * * it is the 'value of the interest' that is *guaranteed;* not the *investment*",[5] to the owner.

We can perceive no substantial error in the rulings or charge of the trial court which would require reversal. Accordingly the judgment will be affirmed.