SWANN, Judge.
Originally the State Road Department of Florida appealed from the summary final decree for the plaintiff, Florida East Coast Railway Company. The State of Florida Department of Transportation has been appropriately substituted for the former Road Department as appellant in this cause.
This court heard oral argument on the appeal on April 30, 1969, and was of the opinion that constitutional questions were involved. Accordingly, the appeal was transferred to the Supreme Court of Florida on May 23, 1969. On December 11, 1969, the Supreme Court transferred the appeal back to this court because the original transfer was improvidently entered.
The pertinent portions of the summary final decree rendered by the able trial judge are:
“In 1897 Julia Tuttle conveyed certain property to the Plaintiff by deed which was duly recorded in the public records of Dade County, Florida, and Plaintiff’s claim of ownership and the right to possession of the property involved herein arises from that deed. In 1926, the Plaintiff entered into a written agreement with the CITY OF MIAMI which gave the CITY a thirty-year easement over a fifty-foot strip of the property acquired from Julia Tuttle running from Northeast 6th to 9th Streets immediately adjacent to the east boundary of the existing road. The easement was given for the sole purpose of enabling the CITY to widen what is now known as Biscayne Boulevard.
In 1927, the CITY, in precise accord with terms of the easement, caused the fifty-foot strip to be paved and thereafter maintained it. Since that time, the property has been used by the public continuously for street purposes as authorized in the easement.
In 1946, the STATE ROAD DEPARTMENT assumed the burden of maintaining the road and in 1946 repaved it with asphalt to a depth of two inches. The DEPARTMENT contends that it has maintained the strip from 1947 to date and there is no evidence in the record to the contrary.
In 1956, the easement of 1926 expired, but was renewed by a so-called Extension Agreement in writing entered into in 1957 between the CITY and a court-appointed Trustee on behalf of the railroad. This agreement provided that the easement as extended would be terminable on six-months’ notice by either party and in such case that ‘all rights and equities as between the parties hereto shall be the same as existed immediately prior to July 20, 1926.’ On May 27, 1966, the Plaintiff notified the CITY of the termination of the easement, *728 effective December 1, 1966, and advised the DEPARTMENT of the termination.
On February 7, 1967, the DEPARTMENT filed a map with the Clerk of the Circuit Court of Dade County showing the location of the fifty-foot strip and stating, inter alia, that the strip had been vested in the DEPARTMENT pursuant to Florida Statute 337.31. This statute creates a presumption that a road has been dedicated to the public when it has been continuously maintained by the DEPARTMENT for a period of four years. This action for inverse condemnation was filed by the Plaintiff two months later on April 10,1967.
The basic question to be determined is, therefore, whether the railroad is still the owner of the property with the right to its possession upon termination of the easement as extended, or whether, as the STATE ROAD DEPARTMENT contends, the DEPARTMENT acquired ownership of the property for the State pursuant to the statute. The issue is therefore one of law as to which the Court has arrived at the following conclusions:
1. Florida Statute 337.31 [F.S.A.] on which the Defendant relies was never intended by the legislature to apply to a case such as the one at bar. The statute is one of repose designed to put at rest the State’s ownership of roads constructed on land where there had been no express grant or dedication and which have been maintained at the expense of the State by the DEPARTMENT over a statutory period of years without protest by any alleged claimant. It was not intended to apply to roads constructed by a municipality pursuant to an express grant of easement from the owner for road construction purposes as is the case here.
2. The conclusion that the statute was not intended to apply to a case such as the instant one finds support in the constitutional consequences of attempting to apply it. The Plaintiff’s reversionary rights under the easement, the right to resume possession of the property, did not accrue until the easement was terminated in December 1.966. At no time prior thereto could the Plaintiff have taken steps to preserve its rights in the manner provided by the statute. The statute as originally enacted in 1935, and as amended in 1941 and 1947, contained a one-year savings clause designed to enable a claimant to contest a taking of his property rights under the statute. As finally amended in 1955, the statute had no savings clause at all. Hence, as applied to the Plaintiff, the statute would operate to nullify the easement without recourse, in effect impair the obligation of a contract, contrary to the State and Federal constitutions. Biltmore Village, Inc. v. Royal, 71 So.2d 727, 41 A.L.R. 1380 (Fla.1954); Stephenson v. Cavendish [134 W.Va. 361], 59 S.E.2d 459, 19 A.L.R. 2d 720 (W.Va.1950); 16 C.J.S., Constitutional Law, sec. 353.
A serious constitutional question arises when an attempt is made to apply the statute to this case because of the inclusion of language creating a conclusive presumption of dedication. The statute provides that when a road has been maintained for the statutory period, the road shall be deemed to be dedicated to the public, and that ‘such dedication shall be conclusively presumed’ to vest in the county or state all right, title, easements and appurtenances therein whether there be any record of conveyance, dedication or appropriation to the public use or not. As the Supreme Court of the United States said in Western and A. R. R. v. Henderson, 279 U.S. 639, 642, 73 L.Ed. 884, 888, 49 S.Ct. 445, 447 (1929): ‘A statute creating a presumption that is arbitrary, or that operates to deny a fair opportunity to repel it, violates the due process clause of the Fourteenth Amendment.’ See also: 16 C.J.S., Constitutional Law, sec. 128.
*729 In addition to the foregoing, there is the general prohibition against the taking of private property for public use without just compensation. City of Miami Beach v. Belle Isle Apartment Corp. [Fla.App.], 177 So.2d 884, 886, United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311, 318 (1945).
3.The statute was not made applicable to roads constructed by a municipality until 1955, but the DEPARTMENT contends that it was applicable to roads constructed by the State and that the DEPARTMENT constructed or reconstructed the road when it resurfaced it in 1947. In the view of the Court, this does not accord with the facts. The inescapable facts are that prior to 1926, the road was only half its present width. The CITY wanted to widen it and obtained an easement from the Plaintiff for that express purpose. The road was accordingly widened by the CITY and the public used it for twenty years before the DEPARTMENT took over. To say, therefore, as the DEPARTMENT does forty years later (almost as an afterthought) that the road was constructed or reconstructed when the DEPARTMENT resurfaced it in 1947, is simply to ignore the circumstances under which the road came into existence. This Court cannot indulge in any such legal legerdemain to find that the DEPARTMENT rather than the CITY constructed the road and that the easement thereafter became a nullity. During the existence of the easement and its extension, that is from 1926 to its termination in 1966, the sole right of the public and the STATE ROAD DEPARTMENT to the use and occupancy of the fifty-foot strip for street and highway purposes was by virtue of the said easement. The DEPARTMENT representing the using public acquired no greater rights than those enjoyed by the CITY and it is bound as well as the CITY to recognize the re-versionary rights of the Plaintiff. The Court concludes that the Plaintiff railroad is the owner of record of the land upon which the road in question was constructed and that, upon termination of the easement pursuant to which it was constructed, the right of possession of the property reverted to the record owner.
4. The Defendant, STATE ROAD DEPARTMENT, has retained possession of the road in derogation of Plaintiff’s rever-sionary rights and without payment of compensation therefor to the Plaintiff as guaranteed by the State and Federal constitutions.
5. In view of the undisputed material facts involved as outlined above, it is unnecessary for the Court to resolve at this time pending motions to strike certain affidavits and parts of affidavits filed by the parties.
NOW, THEREFORE, it is ORDERED, ADJUDGED and DECREED that:
1. The motion of the Defendant, STATE ROAD DEPARTMENT, for summary judgment be and the same is hereby denied.
2. The motion of the PLAINTIFF FLORIDA EAST COAST RAILWAY COMPANY for Summary Judgment against the STATE ROAD DEPARTMENT be and the same is hereby granted. Summary Final Judgment is entered for the plaintiff FLORIDA EAST COAST RAILWAY COMPANY against the STATE ROAD DEPARTMENT.
3. The Plaintiff is the owner in fee simple of the land involved herein, and such ownership is superior to any claim of the public or the Defendant, STATE ROAD DEPARTMENT, for use of the property as a public street, road, highway or otherwise; and the Plaintiff is entitled to possession of said land as against all rights and claims of the Defendant, STATE ROAD DEPARTMENT, unless the Defendant provides for payment to the Plaintiff of the proper amount due it as *730 required by law for the taking of Plaintiff’s property for public use.”
***** *
The Department of Transportation argues that the trial court erred in granting a summary final decree for the plaintiff railroad because there were genuine issues of material fact to be determined under the affirmative defenses raised in its answer and also erred in denying its own motion for a summary final decree.
We do not necessarily agree with all of the rationale and conclusions set forth in this well reasoned decree. We do not find any reversible error therein, however. The final decree is, accordingly,
Affirmed.