STATE OF NEW JERSEY BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF-APPELLANT, v. WILLETT HOLDING COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 11, 1972—Decided January 25, 1972.

Before Judges LABRECQUE, LANE and LORA.

*Mr. Richard L. Rudin,* Deputy Attorney General, argued the cause for appellant (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Mr. J. Mortimer Rubenstein* argued the cause for respondent.

PER CURIAM. The only point raised by plaintiff is that "The costs incurred by the condemnee in obtaining certain finance commitments attributable to its development activities and business venture are noncompensable in a condemnation proceeding." In the context of the facts adduced, we find it to be without merit.

The parcel taken consisted of 20 acres out of a 50-acre tract owned by defendant. It was difficult of access and both parties argued that its highest and best use was as a site for a nursing home. At the time of the taking it was being developed for that purpose and the nursing home itself had been partially completed.

The owner was entitled to recover a sum equal to the value of the parcel taken and the damage to the 30 acres remaining in the tract. On the issue of the value of the parcel taken, the parties stipulated that the reproduction value of the partially completed nursing home, as of the time of the taking, was $314,634. Hendricks, defendant's expert, testified that, *without* giving consideration to the value of the partially completed nursing home or the financial commitments on the basis of which it was being constructed, the value of the parcel taken and the damage to the remainder amounted to $336,300. In his opinion the full value would be more than the sum of $336,300 and the stipulated $314,634 because of the existence of the mortgage financing arrangements. There was testimony that these financial commitments were assignable. It was therefore proper to permit the jury to consider this factor in arriving at its lump sum award.

Hendricks testified that the mortgage financing arrangements increased the value, as given by him, "by at least the cost of *this* mortgage financing" (emphasis added) and opined that a prudent willing buyer in a transaction of this type would pay "dollar for dollar" the cost of the mortgage commitments and financing fees. Proof was adduced that the cost of obtaining the mortgage commitments had been $48,883.50 but this figure was later reduced to $43,450 by the court.

Plaintiff challenges the receipt of testimony as to the cost to the owner of such financing and its consideration by the jury. We fail to see how it was thereby prejudiced. Clark, plaintiff's expert, while taking the position that they were not compensable, conceded that the financing arrangements made the property more attractive to a buyer in 1967 and that in 1970 it would have made a "tremendous difference." Had Hendricks testified that in his opinion the land value was $379,750 ($336,300 plus $43,450), it concededly would have been a proper item for consideration by the jury. His testimony that his figure for the bare land, $336,300, was

enhanced by *at least* the cost of financing ($43,450), and that a willing buyer would pay a willing seller "dollar for dollar" the cost of financing, was no less so.

We are convinced that, considering the charge as a whole and in the light of the unique factual pattern before the court, the jury was correctly instructed as to the manner in which it was to consider this portion of the testimony. We are not prepared to assume that the jury disregarded the court's charge.

As to the cross-appeal, we are in accord that interest should have been allowed for the period from July 1, 1970 to July 31, 1970. The judgment should be modified accordingly to provide for additional interest of $547.50.

The judgment, as modified, is affirmed.

LANE, J. A. D. (dissenting). The State appeals from a condemnation award. The parties stipulated that the highest and best use of the land was for a nursing home on the lands. Before the taking the property owner had obtained construction and permanent mortgage commitments. There was testimony that the commitments were assignable and that the existence of the commitments would increase the value of the land. The trial court allowed the jury to consider the sum of $43,452 which represented part of the property owner's costs in obtaining the commitments.

I agree that the jury could consider whether the existence of the mortgage commitments enhanced the value of the land and by what amount if there was proper evidence of the amount of such enhancement. The issue, however, is whether it was reversible error to allow the jury to consider the costs to the property owner of obtaining the commitments.

The objective of a condemnation award is to indemnify the owner for the loss of the property taken. Generally, the fair market value of the property taken is the basis for such an award. This value is measured by a price which would be agreed upon voluntarily between a hypothetical owner willing to sell and a hypothetical buyer willing to purchase at the

date of the taking. Although this concept is somewhat indefinite, it has been held that with some flexibility it would best serve to attain the goal in condemnation proceedings of justice and indemnity in each particular case. *State v. Gallant,* 42 *N. J.* 583, 587 (1964); *State Highway Com'r, State by, v. Burnett,* 24 *N. J.* 280, 288 (1957); *Trenton v. Lenzner,* 16 *N. J.* 465, 476 (1954), *cert.* den. 348 *U. S.* 972, 75 S. Ct. 534, 99 *L. Ed.* 757 (1955). A determination of just compensation should reflect "[a]weighing of all of the factors which customarily enter into * * * purchase and sale negotiations." *Id.* at 479.

It was not denied by the State's expert that the value of the commitments would be an incentive to a willing buyer. However, here such value was not shown. Instead, the jury was instructed to consider the cost to the property owner of obtaining the commitments. While it is the property owner's loss, not the taker's gain, which is the basis for the measurement of compensation, not all losses suffered by an owner are compensable. *United States ex rel. for Use of Tennessee Valley Authority v. Powelson,* 319 *U. S.* 266, 281, 63 S. Ct. 1047, 87 *L. Ed.* 1390 (1943). Damages or costs of a speculative, uncertain nature are not compensable. *Housing Authority, Clementon v. Myers,* 115 *N. J. Super.* 467, 475, 476 (App. Div. 1971).

Excluded from a determination of just compensation are damages or costs incidental to the taking, such as loss to or destruction of goodwill, loss of profits or inability to relocate. The noncompensability of these losses has been justified on the grounds that their value is too speculative, remote and uncertain to accurately measure. Such losses depend upon various factors not attributable to the land. Although undoubtedly they would be considered in a sale, they furnish no reliable criterion for the determination of fair market value. *United States v. General Motors Corp.,* 323 *U. S.* 373, 379, 65 S. Ct. 357, 89 *L. Ed.* 311 (1945); *State v. Gallant, supra,* 42 *N. J.* at 587; *Port of New York Authority v. Howell,* 59 *N. J. Super.* 343, 349 (Law Div. 1960), aff'd

68 *N. J. Super.* 559 (App. Div.), certif. den. 36 *N. J.* 144 (1961). Trees, shrubs, topsoil, underlying stone, sand and gravel are considered component parts of the land but are not compensable separate and apart from the land itself. Separate valuations are collateral and contingent. *Ringwood Co. v. North Jersey District Water Supply Comm'n*, 105 *N. J. L.* 165, 169 (E. & A. 1928); *Manda, Inc. v. Delaware, L. & W. R. Co.*, 89 *N. J. L.* 327, 329 (E. & A. 1916); *Port of New York Authority v. Howell, supra*, 59 *N. J. Super.* at 348; *Ross v. Commissioners of Palisades Interstate Park*, 90 *N. J. L.* 461, 467 (Sup. Ct. 1917).

Generally, it has been held that costs of moving industrial equipment are not compensable. *State v. Gallant, supra*, 42 *N. J.* at 587; *American Salvage Company v. Housing Authority, Newark*, 14 *N. J.* 271, 280 (1954); *Port of New York Authority v. Howell, supra*, 59 *N. J. Super.* at 349. See 27 *Am. Jur.* 2d, *Eminent Domain*, § 293, at 102 (1966); 29A *C. J. S. Eminent Domain* § 164 at 713 (1965). But see *Housing Authority, Clementon v. Myers, supra*, 115 *N. J. Super.* 467. As an exception to the general rule, costs of reproduction are permitted only where there are no comparable sales available. *State Highway Com'r, State by, v. Burnett, supra*, 24 *N. J.* at 292.

The costs incurred by the property owner in obtaining the mortgage commitments were collateral and incidental to the taking of the land. They were highly speculative, depending upon the person making the application, the state of the money market at the time the application was made, the availability of funds to the lending institutions and the judgment of the lending institutions as to the project planned. The $43,452 represented commitment fees paid to the lending institutions and placement fees paid to the mortgage broker. It is speculative that a willing purchaser at the time of the taking would have sought financing through a broker or would have had to pay commitment fees. In allowing the jury to consider these costs as proof of the value of the mortgage commitments to a willing buyer at the time of the tak-

ing, the trial court allowed it to speculate on the possibility at the time of the taking it would have cost a willing buyer an equal amount to obtain the commitments and that, therefore, such willing buyer would pay that much more for the land. Such costs cannot be said to accurately reflect an increase in the market value of the land. *City of Chicago v. Provus*, 415 *Ill.* 618, 114 *N. E.* 2d 793, 795 (Sup. Ct. 1953).

If the testimony as to the costs of the commitments is properly admissible in this case, logically testimony as to the costs of site improvements installed in a subdivision prior to the taking would be admissible. How far would such a principle extend? Could a property owner offer testimony of attorneys' fees incurred in clearing title to the property? Where a portion or all of a subdivision is taken, could the property owner offer testimony as to the architectural and engineering fees incurred? I submit that a veritable Pandoras box will be opened by allowing testimony of such costs.

The admission into evidence of the $43,452 costs to the property owner and the charge allowing the jury to consider that figure were reversible errors.

I would reverse the judgment and remand the case for a new trial.