**DEMARCO DURZO DEVELOPMENT CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–2263C.

United States Court of Federal Claims.

May 20, 2004.

K. Bradley Mellor and Rochelle R. Koerbel, Bluming & Gusky, L.L.P., Pittsburgh, Pennsylvania, counsel for plaintiff Demarco Durzo Development Co.

Andrew P. Averbach, United Stated Department of Justice, Civil Division Commercial Litigation Branch, counsel for defendant, with whom were Assistant Attorney General Peter D. Keisler, Director David M. Cohen, and Assistant Director Harold D. Lester, Jr., Robert J. McCall, United States General Services Administration, Regional Counsel, Of Counsel.

## MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

This government contract case concerns legal issues where the governing precedent is well-established in the United States Court of Appeals for the Federal Circuit.

### RELEVANT FACTS [1]

#### A. The October 2, 1984 Lease Agreement.

Plaintiff DeMarco Durzo Development Company ("DeMarco") is an unincorporated

---

1. The relevant facts recited herein were derived from the following pleadings and portions of the record: Plaintiff's September 30, 2003 Complaint ("Compl."); Exhibits to Plaintiff's Septem-

association engaged in the business of leasing commercial real property. *See* Compl. at ¶¶ 1–2. The dispute in this case arises under Lease No. GS–03B–40056 ("Lease"), entered into on October 2, 1984, as amended by extension options, between DeMarco and the General Services Administration ("GSA") for commercial real estate located in Monroeville, Pennsylvania. *See* Compl. at ¶¶ 7–10; Compl. Ex. A. The term of the Lease was five years, beginning on January 1, 1985, and ending on December 31, 1989, at the rate of $5,973.75 per month. *See* Compl. at ¶ 8; Compl. Ex. A. The Lease included a termination clause:

> [GSA] may terminate this lease at any time after 5th year by giving at least 60 days' notice in writing to the Lessor and no rental shall accrue after the effective date of termination. Said notice shall be computed commencing with the day after the date of mailing.

Compl. Ex. A.

### B. The Lease Extension Options.

At the end of the initial term of five years, GSA exercised an option to extend the Lease for an additional five year period, entering into Supplemental Lease Agreements 1–9. *See* Compl. at ¶ 9; Pl. Opp. at 2.[2] GSA occupied the property for the entirety of the second term and then exercised an option to extend the Lease for an additional five years to begin on January 1, 1996. *See* Compl. Ex. B. On March 1, 2000, DeMarco and GSA executed Supplemental Lease Agreement 13, which exercised an option to extend the Lease for an additional five year term to end on December 31, 2005. *See* Compl. Ex. C. In consideration for GSA's exercising its option to renew the Lease for this additional period, DeMarco made certain "alterations to upgrade the HVAC system in [the leased] space and improve air flow to meet the lease requirements." Compl. Ex. C. DeMarco also set the monthly rental rate at $11,664.16. *Id.*

ber 30, 2003 Complaint ("Compl.Ex."); Defendant's January 12, 2004 Motion to Dismiss ("Def.Mot."); Plaintiff's February 12, 2004 Brief in Opposition ("Pl.Opp."); and Defendant's March 1, 2004 Reply ("Def.Reply").

2.  Supplemental Lease Agreements 1–9 were not submitted as exhibits to plaintiff's Complaint.

On March 10, 2000, GSA's contracting officer ("CO") advised DeMarco in writing that GSA intended to "pursue an alternate lease location," pursuant to the "termination rights" of the Lease. *See* Compl. at ¶ 12; Compl. Ex. D. DeMarco further was advised that GSA anticipated terminating the five year extension as early as December 2000, but no later than June 2001. *Id.* In a March 24, 2000 follow-up letter, the CO advised DeMarco that "it is in the best interest of the Government to search for a competitive lease. As stated in [my] letter, the earliest this relocation would occur is December of this year [2000], and the latest is June, 2001." Compl. Ex. E. GSA, however, did not vacate in June 2001 and instead continued to occupy the property and pay rent, pursuant to the Lease. *See* Compl. at ¶¶ 15–16; Def. Mot. at 3; Pl. Opp. at 2.

On March 25, 2003, the CO advised DeMarco by letter of its "official Notice of Termination by the Government for the [Monroeville, Pennsylvania] lease," 60 days from the date of the letter. Compl. Ex. F. Again, however, GSA did not vacate the property until August 31, 2003. *See* Compl. at ¶¶ 21, 31. The last rent payment of $11,664.16 was made in July 2003. *See* Compl. at ¶ 21; Def. Mot. at 3; Pl. Opp. at 3. DeMarco also claims that in vacating the property, GSA improperly removed certain security equipment owned by DeMarco and failed to remove certain fixtures and to return the property to its pre-lease condition. *See* Compl. at ¶ 22; Pl. Opp. at 3.

### PROCEDURAL BACKGROUND

On April 17, 2003, DeMarco's counsel sent a letter to the CO, pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.*, setting forth DeMarco's claims against GSA and requesting a decision within 60 days.[3] *See* Compl. at ¶ 19; Compl. Ex. G; Pl. Opp. at 3.

3.  Specifically, DeMarco claims:

    In March of 2000, the [GSA] executed Supplemental Lease Agreement No. 13 opting to renew its Lease with [DeMarco] for the lease space for a five (5) year renewal period terminating on December 31, 2005. In reliance upon this Lease Agreement, [DeMarco] undertook to complete a number of structural im-

On May 7, 2003, the CO notified DeMarco by letter that a final decision would be issued no later than August 16, 2003. *See* Compl. at ¶ 20; Compl. Ex. H. The CO, however, failed to issue a final decision by that date. *See* Compl. at ¶ 23; Pl. Opp. at 3. As a matter of law, that inaction is deemed a denial. *See* 41 U.S.C. § 605(c)(5).

On September 30, 2003, DeMarco filed a Complaint in the United States Court of Federal Claims asserting breach of contract, estoppel, and takings claims. *See* Compl. On January 12, 2004, the United States ("the Government"), on behalf of GSA, filed a motion to dismiss, pursuant to CFCR 12(b)(6). The Government asserts three bases to support the motion to dismiss: DeMarco has failed to state a claim on which relief can be granted, because GSA acted within its rights to terminate the Lease; DeMarco's Complaint does not allege the requisite elements to support an estoppel claim; and there was no taking of property by GSA. *See* Def. Mot. at 4–8.

## DISCUSSION

### A. Jurisdiction.

Under the Contract Disputes Act, 41 U.S.C. §§ 601, *et seq.*, the United States Court of Federal Claims has jurisdiction to hear a breach of contract claim, however, a contractor must exhaust available administrative remedies by first seeking and obtaining a formal decision of the relevant CO. *See* 41 U.S.C. § 605(a).

In this case, DeMarco filed timely claims with GSA's CO, who failed to issue a decision regarding all claims in the required time period. *See* Compl. at ¶ 23. Therefore, the court now has jurisdiction because "[a]ny failure by the [CO] to issue a decision on a contract claim within the period required will be deemed to be a decision by the [CO] denying the claim and will authorize the commencement of . . . suit on the claim as otherwise provided in this chapter." 41 U.S.C. § 605(c)(5).

### B. Standard For Decision.

Dismissal under CFCR 12(b)(6) for failure to state a claim upon which relief can be granted "is appropriate when the facts as asserted do not entitle the claimant to a legal remedy." *Ainslie v. United States*, 355 F.3d 1371, 1373 (Fed.Cir.2004); *see also Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir.2003) (in evaluating a motion to dismiss, "the court must accept all well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."). Moreover, the court should not dismiss a Complaint for failure to state a claim, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409, 413 (Fed.Cir.1988) (quoting *McClary v. United States*, 775 F.2d 280, 283 (Fed.Cir.1985)). In addition, as a matter of law, any challenge to the sufficiency of the Complaint under CFCR 12(b)(6) is "not sufficient notice that the non-movant must re-

provements and alterations to the leased premises at the United States' request. Thereafter, on March 10, 2000 and again on March 24, 2000, the United States notified [DeMarco] that it intended to prematurely terminate the Lease *no later than* June, 2001. Subsequently, however, the [GSA] failed to vacate the premises on or before June, 2001 and instead has continued to occupy the property to the present date. As a result of this action, [DeMarco] lost any opportunity at that time to lease the premises to another tenant. Moreover, [DeMarco] reasonably relied upon the United States' decision not to vacate the premises in June of 2001 as the government's good faith intention to fulfill its contractual obligations toward the expiration of the Lease Agreement and on that basis was deprived of any opportunity to rent the premises to prospective ten-

ants. By its actions, the [GSA] has waived any right it may have previously had to prematurely terminate the Lease Agreement. The [GSA] is now estopped from again attempting to terminate its Lease Agreement with [DeMarco] and instead must satisfy its obligations under the Lease Agreement which provides for the United States to pay [DeMarco] monthly rental payments in the amount of $11,664.16 through December 31, 2005. An additional thirty-one (31) months remain until the expiration of the Contract with [DeMarco]. By prematurely terminating the Lease Agreement, the United States has defaulted on its Contract with [DeMarco] and is indebted to [DeMarco] for the full amount of the remaining Lease period totaling $362,969.69 (emphasis in original).
Compl. Ex. G.

spond, as if to a motion for summary judgment, and place material facts in dispute." *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems,* 988 F.2d 1157, 1164 (Fed.Cir.1993).

## C. Disposition Of The Government's January 12, 2004 Motion To Dismiss.

### 1. Count I (Breach Of Contract Claim).

■ Count I of the Complaint alleges that GSA's termination of the Lease prior to December 31, 2005, constituted a breach. *See* Compl. at ¶¶ 26–36. The United States Court of Appeals for the Federal Circuit has held that to recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *See San Carlos Irrigation & Drainage Dist. v. United States,* 111 F.3d 1557, 1563 (Fed.Cir.1997) ("A plaintiff must show that but for the breach, the damages alleged would not have been suffered.").

An examination of the Complaint shows that DeMarco set forth allegations sufficient to state elements required to establish a breach of contract claim. First, the parties do not dispute the validity of the Lease or extension options. *See* Pl. Opp. at 6. In addition, Paragraph 32 alleges that GSA was obligated to occupy the property throughout the term of Supplemental Lease Agreement 13, *i.e.,* until December 31, 2005. *See* Compl. at ¶ 32. Paragraph 34 alleges that GSA breached this duty by terminating the Lease prior to December 31, 2005. *See* Compl. at ¶ 34. Moreover, Paragraph 36 specifies that $362,969.69 in damages were incurred by De-Marco as a result of GSA's alleged breach of the Lease. *See* Compl. at ¶ 36.

The Government contends, however, that the "clear intent of the parties [in replacing original paragraph two with the new language of paragraph two provided in Supplemental Lease Agreement 13] was to extend the term of the lease through 2005, *subject to*

*the termination rights (that is, the Government's right to terminate upon 60 days' notice)* set forth in paragraph 4 of the original agreement." Def. Reply at 2 (emphasis added). Paragraph two of the Lease, as amended by Supplemental Lease Agreement 13, provides:

TO HAVE AND TO HOLD the said premises with their appurtenances for the term beginning January 1, 1985 through December 31, 2005 subject to termination and renewal rights as may be hereinafter set forth.

Compl. Ex. C.

In addition, paragraph four of the Lease contains the following language:

[GSA] may terminate this lease at any time after [the] 5th year by giving at least 60 days' notice in writing to the Lessor and no rental shall accrue after the effective date of termination. Said notice shall be computed commencing with the day after the date of mailing.

Compl. Ex. A.

Therefore, the Government argues that it was within its rights prematurely to terminate the Lease because Supplemental Lease Agreement 13 extended the term from 1985 through 2005 and the termination of the Lease was made in the 19th year of the Lease, well after the five year vesting period had elapsed. *See* Def. Reply at 3. DeMarco maintains that Supplemental Lease Agreement 13 established a fixed five year period, rather than permitting termination with 60 days notice and to the extent that paragraph four of the original lease applies to Supplemental Lease Agreement 13, termination rights accrue only after a five year term has elapsed. *See* Pl. Opp. at 7.

Applying the well-established standards of our appellate court under CFCR 12(b)(6) to the allegations in Count I, the court has determined a claim has been properly asserted that GSA breached paragraph four of the Lease, particularly in light of the language contained in paragraph two of Supplemental Lease Agreement 13. Therefore, drawing all

reasonable inferences in DeMarco's favor, the Complaint in this case adequately has set forth all elements of a breach of contract claim sufficient to withstand a motion to dismiss.

In the alternative, the Government argues that the breach of implied covenant and waiver claims are unsupportable and, therefore, warrant dismissal. *See* Pl. Mot. at 4–5.[4] In the March 10, 2000 and March 24, 2000 letters, the CO notified DeMarco that GSA intended to vacate the property no later than June 2001. *See* Compl. Exs. D, E. The Government, however, asserts that "the mere fact that the contracting officer inaccurately estimated the date that the Government would be vacating the premises in a letter informing [DeMarco], *as a courtesy,* that the Government intended to vacate the premises in the future, does not support a finding that the Government breached the implied covenant of good faith and fair dealing." Def. Mot. at 4. The Government also contends that it did not voluntarily relinquish termination rights under the Lease when it failed to vacate the property by June 2001. *See* Def. Mot. at 5. Drawing all inferences in DeMarco's favor, as it must, the court has determined that DeMarco has asserted sufficient facts to seek relief under the allegations set forth in the Complaint. *See* CFCR 12(b)(6). Accordingly, the Government's Motion to Dismiss Count I is denied.

### 2. Count II (Equitable Estoppel Claim).

Count II of the Complaint alleges that GSA equitably is estopped from prematurely terminating the Lease, because the CO's March 10, 2000 letter notifying DeMarco of GSA's intent to terminate the Lease no later than June 2001. *See* Compl. Ex. D. Count II further alleges that DeMarco reasonably relied upon GSA's failure to vacate the property and did not seek other tenants, with that

consequence of $362,969.69 of damages resulted, *i.e.,* the amount due under the Lease had GSA continued to occupy the property from May 2003 through December 31, 2005. *See* Compl. at ¶¶ 39–44.

The United States Court of Appeals for the Federal Circuit requires satisfaction of four elements before a party can prevail on a claim of equitable estoppel against the United States:

> (1) the government must know the true facts; (2) the government must intend that its conduct be acted on or must so act that the contractor asserting the estoppel has a right to believe it is so intended; (3) the contractor must be ignorant of the true facts; and (4) the contractor must rely on the government's conduct to his injury.

*JANA, Inc. v. United States,* 936 F.2d 1265, 1270 (Fed.Cir.1991). Moreover, the Federal Circuit held in *Zacharin v. United States,* 213 F.3d 1366 (Fed.Cir.2000) that:

> Although the Supreme Court has not adopted a *per se* rule prohibiting the application of equitable estoppel against the government under any circumstances, it has made it clear that "the government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Servs.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In particular, the Court has suggested that if equitable estoppel is available at all against the government some form of *affirmative misconduct* must be shown in addition to the traditional requirements of estoppel.... While the Supreme Court has not squarely held that affirmative misconduct is a prerequisite for invoking equitable estoppel against the government, [the Federal Circuit] has done so, as has every other court of appeals.

*Id.* at 1371 (citations omitted) (emphasis added).

---

4. Count I alleges that GSA's March 2000 termination notice gave rise to an implied covenant requiring GSA to vacate the property by June 2001. *See* Compl. at ¶ 29. In the alternative, the Complaint alleges that GSA waived its right to terminate the lease agreement by continuing to occupy the property and paying rent from June 2001 through August 2003. *See* Compl. at ¶¶ 31–33.

It is well settled in the Federal Circuit that some form of "affirmative misconduct" must be shown in addition to the traditional requirements of estoppel when an equitable estoppel claim is asserted against the Government. *See Rumsfeld v. United Technologies Corp.,* 315 F.3d 1361, 1377 (Fed.Cir.2003). Although DeMarco maintains that the CO's notification of GSA's intent to vacate no later than June 2001 constituted "affirmative misconduct" sufficient to support a claim for equitable estoppel, the court has determined that the CO's actions fall short of the misconduct necessary to survive a motion to dismiss. *See* CFCR 12(b)(6).

The Complaint does not allege facts that the CO intentionally deceived DeMarco nor that the CO had any reason to deliberately misstate the date by which GSA intended to terminate the Lease. Therefore, as a matter of law, the mere assertion that the CO informed DeMarco that GSA would terminate the Lease by June 2001 and GSA's failure to vacate the property is not sufficient to overcome the presumption that the CO acted in good faith, even construing the facts in a light most favorable to DeMarco. *See Alaska Airlines, Inc. v. Johnson,* 8 F.3d 791, 795 (Fed.Cir.1993) ("[T]here is a presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with the law and governing regulations.").

Finally, DeMarco's reliance on *Southern Calif. Edison v. United States,* 58 Fed.Cl. 313 (2003) for the proposition that estoppel is established by GSA's conduct not to seek another tenant to lease the property is misplaced. *See* Pl. Opp. at 11. In that case, the plaintiff purchased energy from the Bonneville Power Authority (BPA), a federal entity within the Department of Energy engaged in the sale of energy generated at federal hydroelectric dams in the Pacific Northwest. *Southern Calif. Edison,* 58 Fed.Cl. at 314. The Complaint, however, cited specific examples of misconduct, *e.g.,* BPA did not disclose: "decisions to 'operationally mitigate' its power deficits and leave the Contract in sales mode[;]" "BPA's annual notice regarding the non-conversion of the Contract to exchange mode in the 1990s stated that the decision was made pursuant to Section 6 of the Contract even when BPA was acting on factors other than the results of the PNW Coordination Agreement process[;]" and "'BPA intended SCE to rely on the Contract as a stable source of energy regardless of market prices so SCE would not cancel or renegotiate the Contract when contract prices were above market prices and hence favorable to BPA.'" *Id.* at 326–27.

In this case, DeMarco properly has stated a claim for damages incurred in reliance on the CO's March 2000 letters, but it failed to plead facts sufficient to allege affirmative misconduct on the part of GSA. Accordingly, as a matter of law, the court must grant the Government's motion to dismiss Count II.

### 3. Count III (Takings Claim).

The Just Compensation Clause of the Fifth Amendment to the United States Constitution provides, in part, "nor shall private property be taken for public use, without just compensation." U.S. Const., Amend. V. The plaintiff bears the burden of demonstrating that a property interest exists. *See Skip Kirchdorfer, Inc. v. United States,* 6 F.3d 1573, 1582 (Fed.Cir.1993) ("To recover under the Takings Clause, a claimant with a recognized property interest must show that its interest was 'taken.'"). Property rights include "the rights 'to possess, use and dispose of [property].'" *Id.* at 1579 (quoting *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 89 L.Ed. 311 (1945)); *see also M & J Coal v. United States,* 47 F.3d 1148, 1153 (Fed.Cir.1995). To the extent that the government permanently occupies physical property, however, it effectively destroys each of these rights. *Id.*

GSA argues that because no termination of the Lease occurred in June 2001, DeMarco's takings claim is based on a faulty assumption and must necessarily fail because no taking occurred. *See* Def. Mot. at 7–8; Def. Reply at 5. If the facts alleged in the Complaint,

however, are construed in plaintiff's favor at this stage of litigation, it is not clear whether the Lease was terminated on March 25, 2003, as GSA maintains, or that termination was within GSA's contractual rights, either at the time the CO sent the notice letters or when GSA actually vacated the property. Therefore, GSA's assertion that no termination of the Lease occurred in June 2001 cannot sustain the burden imposed on the moving party by under CFCR 12(b)(6).

In this case, Count III of the Complaint properly asserts a Fifth Amendment takings claim. *See* Compl. at ¶¶ 45–50. DeMarco had an interest in the property subject to the Lease. Moreover, the Complaint alleges that: (1) GSA remained in possession of the property after it attempted to prematurely terminate the Lease agreement (*see* Compl. at ¶ 46); (2) GSA denied DeMarco the right to possess the property and to lease the property to other tenants by remaining in possession of the property (*see* Compl. at ¶ 47); and (3) GSA "has not instituted any condemnation proceedings to acquire the appropriate property interest, nor has it offered to pay ... adequate compensation for the use of [the] property after June 31[sic], 2001." *See* Compl. at ¶ 48. Consequently, DeMarco claims that GSA has taken DeMarco's property without compensation, causing DeMarco to suffer damages. *See* Compl. at ¶¶ 49–50. Drawing all inferences in DeMarco's favor, the facts as pled in Count III of the Complaint are sufficient to state a takings claim. In addition, at this stage of litigation, DeMarco also has a valid takings claim with respect to its "security equipment" that allegedly was "erroneously removed" by GSA. *See* Compl. at ¶¶ 22, 45. Therefore, GSA's motion to dismiss Count III of the Complaint is denied.

## CONCLUSION

For the aforegoing reasons, the Government's January 12, 2004 Motion to Dismiss Counts I and III of the Complaint is denied, however, the Government's Motion to Dismiss the equitable estoppel claim set forth in Count II of the Complaint is granted.

The Clerk of Court is ordered to enter an Order consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**