# IN THE SUPREME COURT OF TEXAS

═══════════
No. 19-0605
═══════════

JIM OLIVE PHOTOGRAPHY D/B/A/ PHOTOLIVE, INC., PETITIONER

V.

UNIVERSITY OF HOUSTON SYSTEM, RESPONDENT

═══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════

**Argued February 25, 2021**

JUSTICE DEVINE delivered the opinion of the Court.

JUSTICE BUSBY filed a concurring opinion in which JUSTICE LEHRMANN joined and in which JUSTICE BLACKLOCK joined as to part II.

The issue in this interlocutory appeal from the denial of a plea to the jurisdiction is whether a copyright infringement claim against a governmental entity may be maintained as a constitutional takings claim. The court of appeals concluded "that a governmental unit's copyright infringement is not a taking and that the trial court therefore erred in denying the plea to the jurisdiction." 580 S.W.3d 360, 363 (Tex. App.—Houston [1st Dist.] 2019). Because we agree that the violation of a copyright, without more, is not a taking of the copyright, we affirm.

## I

Jim Olive Photography d/b/a Photolive, Inc. (Olive) is a professional photographer in Houston, Texas. Olive took a series of aerial photographs of the City of Houston in 2005 and displayed them on his website for purchase. Included in the series was a digital photograph

identified as SKDT1082—"The Cityscape." Before displaying these photographs, Olive registered them with the United States Copyright Office. Olive's website describes the applicable copyright protections and states that "[t]he unauthorized use of these images is strictly prohibited."

Olive alleges that sometime in June of 2012, the University of Houston downloaded a copy of The Cityscape photograph from Olive's website, removed all identifying copyright and attribution material, and began displaying the photographic image on several webpages promoting the University's C.T. Bauer College of Business. The University did not seek Olive's permission to use The Cityscape photograph, and Olive did not discover that a copy was being displayed on the University's webpages until years later. After the discovery, Olive demanded that the University cease and desist its unauthorized use, and the University immediately removed the photograph from its website. The University, however, did not pay Olive for its use of the digital copy on its website.

Olive sued the University of Houston, alleging that the University's publication of his photograph was an unlawful taking and sought compensation under Article I, Section 17 of the Texas Constitution and under the Fifth Amendment of the United States Constitution. The University answered and filed a plea to the jurisdiction, asserting its immunity from suit under the doctrine of sovereign immunity. The trial court denied the University's plea, prompting it to pursue an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (authorizing an interlocutory appeal from an order on the government's jurisdictional plea).

The University argued in the court of appeals that (1) a copyright is not property under the federal and state takings clauses, and (2) even if a copyright is property within the meaning of the Takings Clause, Olive's allegations of infringement do not state a cognizable taking. In

2

response, Olive argued that (1) the takings clauses protect all types of property, and (2) the University's appropriation and display of his copyrighted work was a per se taking that should not be analyzed under the multi-factor test for regulatory takings. Agreeing with the University "that a governmental unit's copyright infringement is not a taking," the court of appeals vacated the trial court's order denying the plea and dismissed the "cause for lack of subject-matter jurisdiction." 580 S.W.3d at 363, 377.

The court reasoned that the University's single act of copyright infringement was not a taking because it did not take away Olive's right to use, license, or dispose of the underlying creative work. *Id*. at 375–77. And while the University's infringement may have cost Olive a licensing fee, it did not rise to the level of a viable takings claim. *Id*. Olive appeals the court's decision.

## II

Olive's petition for review begins with the proposition that the Takings Clause protects copyrights, as it does other types of intellectual property, from appropriation by the State and that the court of appeals erred in determining otherwise. Quoting Black's Law Dictionary, Olive submits that "the court's determination that copyrights are not protected by the Takings Clause ignores the core property interest protected by a copyright: the 'exclusive right to reproduce, adapt, distribute, perform, and display the work.'" *Copyright*, BLACK'S LAW DICTIONARY (10th ed. 2014).

We, however, do not read the court of appeals' opinion to determine whether a copyright is, or is not, a property interest protected by the Takings Clause. Although the court discusses the case law and legal scholarship on the issue in some detail, it ultimately finds the cases inconclusive on whether a copyright is a constitutionally protected property right, and the

3

scholars divided on whether it should be.[1]  580 S.W.3d at 366–75.  And although the court describes a copyright as a "protected property interest" for due process purposes, *id*. at 366, and as "property with value to its owner" protected by a federal statutory cause of action for infringement, *id*. at 375 (citing 17 U.S.C. §§ 501(a), 504)), it never decides whether a copyright is also property protected by the Takings Clause.  Instead, the court holds that the University's single act of copyright infringement—the governmental interference with property rights alleged here—does not state a viable takings claim, but rather is akin to a transitory common law trespass for which the state has not waived its immunity.  *Id*. at 376.

A copyright[2] is a form of intellectual property that subsists in works of authorship that are original and are fixed in a tangible medium of expression.  17 U.S.C. § 102.  Olive's photograph is such a work.  So too are books, paintings, sculptures, and musical compositions to name a few.  *Id*. § 102(a).  For a term consisting of the author's life plus seventy years, the owner of a copyright enjoys the five exclusive rights[3] of reproduction, adaptation, distribution, and public performance and display.  *Id*. §§ 302(a), 106.  Infringement occurs when a person or entity exercises any of the owner's exclusive rights in a creative work without authorization or other legal defense.  *Id*. §§ 501, 106.

It seems reasonably clear to some legal scholars "that the exclusive rights that federal copyright law provides to authors and copyright owners qualify as a form of property for

---

[1] We have received amicus briefs from Adam Mossoff, a professor of law at George Mason University, and J. Glynn Lunney, a professor of law at Texas A&M School of Law, expressing contrary views on the property rights that attach to a copyright.  We have also received an amicus brief from the National Press Photographers Association and the American Society of Media Photographers, joined by several similar organizations, in support of the petition for review.

[2] The copyright clause of the United States Constitution authorizes Congress to grant authors a limited intangible property right in their creative works.  *See* U.S. CONST. art. I, § 8, cl. 8.  Pursuant to this authority, Congress enacted the Copyright Acts of 1909 and 1976.  The Copyright Act of 1976 governs works fixed in tangible medium after 1977. *See* 17 U.S.C. §§ 101–1511.

[3] The author's exclusive rights in the work, however, are subject to certain defenses, such as fair use.  *See* 17 U.S.C. § 107 (providing limited defense for purposes such as criticism, comment, news reporting, teaching, scholarship, or research, in light of various specified factors); *see also id.* §§ 108–121 (setting forth additional limitations on exclusive rights).

purposes of takings law."[4] Others disagree.[5] In *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984), the only recent Supreme Court case to deal with an alleged taking of intellectual property, the Court extended the Fifth Amendment guarantee to trade secrets, evoking this comment: "If trade secrets, one of the weakest forms of intellectual property, are protected by the Fifth Amendment, then patents, copyrights, and trademarks must logically be protected as well."[6]

Assuming for our purposes that a copyright is property entitled to such protection, this appeal questions whether pleading a copyright infringement claim against a state actor also encompasses a per se takings claim under the federal and state constitutions.

### III

Olive contends that it does. He argues that copyright infringement by a state actor is a taking for which just compensation is owed under both the federal and state constitutions. He maintains that his copyrighted work, although intangible, is a species of personal property, which is entitled to the same protection from direct governmental appropriation as other types of tangible property. Olive's pleadings allege that the University

> without any independent verification of the rights to The Cityscape photograph, placed [Olive's] copyrighted image into circulation with no attribution or other protections whatsoever. Indeed, upon information and belief, [the University] intentionally or knowingly removed identifying material from The Cityscape before uploading it onto its webpages.

---

[4] John T. Cross, *Suing the States for Copyright Infringement*, 39 BRANDEIS L.J. 337, 390 (2001); *see also* Adam Mossoff, *Patents as Constitutional Private Property: The Historical Protection of Patents Under the Takings Clause*, 87 B.U. L. REV. 689, 693 (2007); Paul J. Heald & Michael L. Wells, *Remedies for the Misappropriation of Intellectual Property by State and Municipal Governments Before and After Seminole Tribe: The Eleventh Amendment and Other Immunity Doctrines*, 55 WASH. & LEE L. REV. 849, 855–57 (1998).

[5] *See, e.g.*, Tom W. Bell, *Copyright As Intellectual ~~Property~~ Privilege*, 58 SYRACUSE L. REV. 523, 538 (2008) ("The right to receive just compensation for governmental takings has long represented a hallmark of property. Does copyright afford such a right? The exact question remains as yet unlitigated and, thus, still subject to dispute."); Davida H. Isaacs, *Not All Property Is Created Equal: Why Modern Courts Resist Applying the Takings Clause to Patents, and Why They Are Right to Do So*, 15 GEO. MASON L. REV. 1, 28–29 (2007) ("Forms of 'property' established solely as a matter of governmental discretion, such as patents, may be entitled to procedural due process protection, but are not automatically entitled to Takings Clause protection.").

[6] Heald & Wells, *supra* note 4, at 856.

Olive further alleges that the University's publication of his photograph on its webpages, without his permission, constitutes a taking of his property for public use in violation of the federal and state constitutions. He argues that the University's unauthorized use of his copyrighted work amounts to a per se taking of his private property and that the multi-factor test for regulatory takings is the wrong analytical framework to apply.

The University, which as movant has the burden of establishing the lack of subject-matter jurisdiction,[7] responds that copyright infringement is not a taking. Moreover, it is not a per se taking, which the University contends arises under very narrow circumstances, such as when the government acts to physically confiscate or occupy tangible property. The University submits that, under the Copyright Act, an infringer violates the copyright owner's rights, but it does not confiscate or appropriate those rights. To the contrary, even during the infringement, the copyright owner retains its right to possess, use, and dispose of the copyrighted work and to exclude others from doing so, including officials of an infringing state entity. *See Ex parte Young*, 209 U.S. 123 (1908) (providing for injunctive relief against government officials). The University concludes that Olive's retention of those rights during the alleged infringement negates the existence of a taking, much less one that is per se.

A

The unlawful taking here is alleged under both the federal and state constitutions. "The Just Compensation Clause of the Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'" *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998) (quoting U.S. CONST. amend. V). The Texas Constitution's takings clause similarly provides that "[n]o person's property shall be taken, damaged, or destroyed for or

---

[7] *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (requiring the state to meet the summary judgment standard of proof); *Dallas County v. Wadley*, 168 S.W.3d 373, 377 (Tex. App.—Dallas 2005, pet. denied) (same).

applied to public use without adequate compensation being made, unless by the consent of such person, . . .” TEX. CONST. art. I, § 17.  Although our state takings provision is worded differently, we have described it as “comparable” to the Fifth Amendment’s Just Compensation Clause.  *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 56 (Tex. 2006).  And, Texas “case law on takings under the Texas Constitution is consistent with federal jurisprudence.” *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477 (Tex. 2012).  Indeed, the parties draw no distinction between the two clauses and primarily rely on federal case law.[8]

A compensable taking does not arise whenever state action adversely affects private property interests.  Governments interfere with private property rights every day.  Some of those intrusions are compensable; most are not.  The plaintiff asserting a taking must allege and ultimately prove not only that the intrusion has affected property, but also that the government’s conduct constitutes a compensable taking of private property for public use without just or adequate compensation.

Other than formal condemnation proceedings, the government can generally “take” property in two different ways.  First, the government can physically appropriate or invade property.  *Horne v. Dep’t of Agric.*, 576 U.S. 350, 359 (2015) (“physical appropriation”); *Ark. Game & Fish Comm’n v. United States*, 568 U.S. 23, 38 (2012) (“physical invasion”).  Second, the government can regulate property so restrictively, or intrude on property rights so extensively, that it effectively “takes” the property.  *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017).  In either situation, the owner may seek compensation through an inverse-condemnation action against the government.  *United States v. Clarke*, 445 U.S. 253, 257 (1980).

“It is well settled that the Texas Constitution waives government immunity with respect

_____

[8] Regarding the Texas Constitution, we note that Olive alleges only that the University’s publication of his work “resulted in a taking . . . in violation of Article I, Section 17 .”  He has not alleged that the University violated any other part of that section.

7

to inverse-condemnation claims." *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014). But "[t]o plead inverse condemnation, a plaintiff must allege an intentional government act that resulted in the uncompensated taking of private property." *Id*. at 831. "A taking is the acquisition, damage, or destruction of property via physical or regulatory means." *Id*. "In the absence of a properly pled takings claim, the state retains immunity" and "a court must sustain a properly raised plea to the jurisdiction." *Id*. at 830.

To determine whether a physical or regulatory interference with property constitutes a taking, a court ordinarily undertakes a "situation-specific factual inquir[y]." *Ark. Game*, 568 U.S. at 32. For regulatory takings, this "'ad hoc'" inquiry involves weighing multiple factors, including the "economic impact of the regulation," the "interference with reasonable investment-backed expectations," and the "character of the government action." *Horne*, 576 U.S. at 360. Each factor "focuses directly upon the severity of the burden that government imposes upon private property rights." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005). A similar multi-factor balancing applies to some physical takings. *Ark. Game*, 568 U.S. at 38–39 (holding that courts consider multiple factors in deciding whether a "temporary physical invasion" constitutes a taking); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432 (1982) (cautioning that "physical invasion" takings are "subject to a balancing process"). A "permanent physical occupation," on the other hand, "is a government action of such a unique character that it is a taking without regard to other factors that a court might ordinarily examine." *Loretto*, 458 U.S. at 432. This type of taking is termed "per se" because the government's action constitutes a taking without regard to other factors. A per se taking presents the strongest claim for compensation and is an exception to the usual multi-factor takings analysis. *Ark. Game*, 568 U.S. at 31–32.

B

Olive contends that copyright infringement fits the per se exception because it is analogous to other confiscatory takings to which the rule applies. Olive maintains that the University's infringement deprived him of the exclusive right to control his work and that this loss of control amounts to a taking that is comparable to a physical appropriation of tangible property. For example, in *Horne v. Department of Agriculture*, the U.S. Supreme Court held that the government's appropriation of a percentage of a farmer's raisin crop as part of a market stabilization program constituted a taking per se, requiring compensation at fair market value. 536 U.S. at 361–62. Olive submits that just as each raisin in *Horne* was the Hornes' personal property, each reproduction of The Cityscape photograph is his. As such, the government's virtual appropriation and display of Olive's copyrighted work is an "actual taking of possession and control" of that reproduction that is just as complete as the physical appropriation of the farmer's raisins in *Horne*. *See id*. at 362.

The court of appeals found this analogy inapposite, noting that *Horne* involved the taking of "tangible personal property, not intangible intellectual property." 580 S.W.3d at 369. But Olive claims that this distinction is immaterial. He points to *Horne*'s observation that the Takings Clause "protects 'private property' without any distinction between different types." 536 U.S. at 358.

But *Horne* was concerned with the physical taking of tangible things. The first question posed in the case was whether the government's "'categorical duty' under the Fifth Amendment to pay just compensation when it 'physically takes possession of an interest in property' . . . applies only to real property and not to personal property." *Id*. at 357 (quoting *Ark. Game*, 568 U.S. at 31). The Court answered no, holding that the government's appropriation of raisins

9

should be treated no differently than real property under the per se rule. *Id*. at 357–58. Tangible property, both real and personal, were plainly the "different types" of private property referenced in Olive's quote from the case. The court of appeals' statement that *Horne* makes "no attempt to address intellectual property" is therefore correct. 580 S.W.3d at 369.

But this is not to say that intellectual property is not personal property or that it is not entitled to protection. Clearly, in some circumstances it is. *See, e.g.*, *Ruckelshaus*, 467 U.S. at 1003–04 (extending Fifth Amendment guarantee to trade secrets). What is less clear is whether, or to what extent, state action may be asserted as a per se taking of an intellectual property right. In *Ruckelshaus*, the U.S. Supreme Court applied a multi-factor regulatory taking analysis to determine that a federal statute operated to effect a taking with respect to some, but not all, trade secret information submitted to the government. *See id*. at 1005–16.

C

"Copyright, like other forms of intellectual property, challenges our common understanding of property as it relates to tangible resources." Pascale Chapdelaine, *The Property Attributes of Copyright*, 10 BUFF. INTELL. PROP. L.J. 34, 51 (2014). When considering allegations that such property has been taken, a court must be mindful of what the word "property" means in the context of the Takings Clause.

Property refers not to a physical thing, but to "the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it." *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945). Property, then, is the bundle of rights that describe one's relationship to a thing and not the thing itself. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 48 (Tex. 2017) (describing property "as a bundle of rights, or a bundle of sticks"); *cf*. 17 U.S.C. § 202 (distinguishing between ownership of a copyright and

10

ownership of any material object in which the work is embodied). This distinction has added significance in intellectual property cases. Professor Cross explains:

> Things themselves are not property. Although we typically refer to land, chattels, accounts, and various other things as our "property," what we are actually referring to is the bundle of rights that we have in those things. At some point, a person's rights in a thing will reach a level where the law concludes that his interest in that thing is a property interest. . . .
>
> This distinction between things and property is often of little consequence in the typical takings case. If the State seizes my automobile, it has also by definition interfered with my "property": my right to possess and use that automobile. In a takings claim involving intellectual property, however, the distinction between things and property becomes more important. Because the "thing" is intangible, use of or damage to that thing need not have any significant impact on the owner's legal rights in the thing.

John T. Cross, *Suing the States for Copyright Infringement*, 39 BRANDEIS L.J. 337, 395 (2001).

As Olive has pleaded and presented this case, the property at issue is the copyright, which is the bundle of rights Olive has in The Cityscape photograph; it is not Olive's original photograph or the unauthorized copy displayed on the University's website. And the question is whether the University's unauthorized use of a copy amounts to a taking of the copyright itself.

Copyright infringement occurs when "[a]nyone . . . violates any of the exclusive rights of the copyright owner,"[9] and Olive equates infringement by the State to a per se taking of the copyright. Olive submits that the unauthorized posting of a copy of The Cityscape photograph on University websites was "akin to a physical invasion" that deprived it of "the core right guaranteed by [its] copyright: the right to exclude everyone from use of [its] copyrighted materials and its exclusive right to reproduce and display the work." Olive thus perceives

---

[9] 17 U.S.C. § 501(a). This section defines "anyone" to "include[] any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity." *Id*. The Supreme Court, however, has recently ruled that the inclusion of the States here is an invalid abrogation of the States' Eleventh Amendment immunity. *See Allen v. Cooper*, 140 S. Ct. 994 (2020) (holding that neither Congress's power under the Intellectual Property Clause to provide copyright protection nor Congress's authority to enforce the commands of the Fourteenth Amendment's Due Process Clause authorized Congress to abrogate the States' Eleventh Amendment immunity from copyright infringement suits in the Copyright Remedy Clarification Act).

infringement not as a mere violation of his copyright but as a loss of control over his copyrighted material, similar to the loss that a private property owner bears when the government physically occupies real property or physically appropriates tangible personal property.

Infringement of a copyright, however, is different than a typical appropriation of tangible property where rights are more closely bound to the physical thing. In a per se taking, the government's "appropriation of property" means the property was "actually occupied or taken away" from the owner. *Horne*, 576 U.S. at 360, 361. It is an "'actual taking of possession and control'" by the government. *Id*. at 362 (quoting *Loretto*, 458 U.S. at 431). But an act of copyright infringement by the government does not take possession or control of, or occupy, the copyright.

A copyright is a "bundle of exclusive rights" conferred and governed by the Copyright Act. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546–47 (1985). Under the Act, the government's violation of those rights does not destroy them. The Act provides that "no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title." 17 U.S.C. § 201(e). The copyright owner thus retains the key legal rights that constitute property for purposes of a per se takings analysis, despite the government's interference.[10]

Similarly, the government's unauthorized use of a copy of the copyrighted work is not an "actual taking of possession and control" of the copyright. *Horne*, 576 U.S. at 362. While an infringer "invades a statutorily defined province guaranteed to the copyright holder alone," it

---

[10] We express no view regarding whether a government's exercise of rights in violation of this statute could rise to the level of a regulatory taking. Professor Cross, however, recognizes that some copyright infringements can have a significant impact on the value of a copyright, and he argues that the copyright owner should recover for a regulatory taking if most of the copyright's value is lost. Cross, *supra* note 4 at 396–97. But he also observes that "most state infringements do not destroy the lion's share of a work's value," and therefore "most will not rise to the level of a constitutional taking." *Id*. at 399.

"does not assume physical control over the copyright." *Dowling v. United States*, 473 U.S. 207, 217 (1985); *see also* John T. Cross, *Intellectual Property and the Eleventh Amendment After Seminole Tribe*, 47 DEPAUL L. REV. 519, 548 (1998) (explaining that the government does not "take over" the copyright when it infringes).

Finally, the government's copyright infringement does not result in the "physical occupation" of property required for a per se taking. *Loretto*, 458 U.S. at 441. "[A] copyright [is] in and of itself an intangible thing." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 36 n.4 (2d Cir. 2010). Thus, while an infringer violates the owner's rights, it "does not assume physical control over the copyright." *Dowling*, 473 U.S. at 217; *see also Alimanestianu v. United States*, 888 F.3d 1374, 1382–83 (Fed. Cir. 2018) (holding that government action impairing the intangible right in a cause of action "is not a physical invasion of property" required for a per se taking).

Copyright infringement not only lacks the key features of a per se taking; it also does not implicate the reasons for creating a per se rule in the first place. It is the physical appropriation of property that justifies the per se rule because it is "perhaps the most serious form of invasion of an owner's property interests." *Loretto*, 458 U.S. at 435. What makes it so serious is the effect on the owner's bundle of property rights. *Id*. "[W]here an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking, because the aggregate must be viewed in its entirety." *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979). But with a physical appropriation of property, the government "does not simply take a single 'strand' from the 'bundle' of property rights: it chops through the bundle, taking a slice of every strand." *Loretto*, 458 U.S. at 435 (citing *Andrus*, 444 U.S. at 65–66).

Specifically, that sort of appropriation "effectively destroys each" strand in the

bundle—the rights "to possess, use and dispose of" the appropriated property. *Id*. (quoting *Gen. Motors Corp.*, 323 U.S. at 378). The owner loses the right not only to possess the appropriated property, but also "to exclude the occupier from possession and use" of it. *Id*. And the appropriation "forever denies the owner any power to control the use of the property; he not only cannot exclude others, but can make no nonpossessory use of the property." *Id*. at 436. Finally, even if the owner retains the right to dispose of the appropriated property, the government's occupation "will ordinarily empty the right of any value, since the purchaser will also be unable to make any use of the property." *Id*.

This justification for the per se rule "is equally applicable to a physical appropriation of personal property." *Horne*, 576 U.S. at 360. Thus, the federal agriculture marketing program in *Horne,* which required raisin growers to reserve a portion of their crop for the government without compensation was a taking. *Id*. at 361–64. Moreover, the "reserve requirement" was a per se taking, the Court held, because those growers "lose the entire 'bundle' of property rights in the appropriated raisins—'the rights to possess, use and dispose of' them." *Id*. at 361–62 (quoting *Loretto*, 458 U.S. at 435). Again, the per se rule applies when the entire bundle of rights in the appropriated property, not just a strand, is impaired by government action.

But Olive argues that "exclusivity" is the core component of each specific right granted under the Copyright Act. And, by reproducing and displaying Olive's photograph, without permission, the University deprived Olive of his exclusive right to control his work, thus depriving Olive of the most important stick in his bundle of rights. Olive contends that even if the University "did not take Olive's entire bundle of rights [that] does not mean that a taking has not occurred." Perhaps not, but neither does it indicate the existence of a per se taking.

As already discussed, infringement by the government does not necessarily destroy any

14

of the copyright owner's rights in the copyright. It does not deprive the copyright owner of the right to possess and use the copyrighted work. *See Dowling*, 473 U.S. at 217 ("The infringer invades a statutorily defined province guaranteed to the copyright holder alone. But he does not assume physical control over the copyright; nor does he wholly deprive its owner of its use."). Rather, copyright is "nonrivalrous," meaning that "another person can use it without simultaneously depriving anyone else of its use." Thomas F. Cotter, *Do Federal Uses of Intellectual Property Implicate the Fifth Amendment?*, 50 FLA. L. REV. 529, 562–63 (1998).

Nor does the government's infringement deny the copyright owner the right to exclude third parties. Because the owner retains the copyright in the original work, it "may still turn to the copyright laws to prevent third parties from using or copying that original." Cross, *supra* note 4, at 396. Specifically, the owner may seek injunctive relief "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). And, injunctive relief is available against the infringing government itself for violating the owner's rights. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72 n.16 (1996) (explaining that "an individual may obtain injunctive relief under *Ex parte Young* in order to remedy a state officer's ongoing violation of federal law," including "copyright" law).[11]

The government's infringement also does not deprive the copyright owner of the right to dispose of the copyrighted work. Because copyright is nonrivalrous, the government's use of the work "does not prevent the [copyright] owner . . . from licensing others to use it." Cotter, *supra*, at 563. And the owner's retained rights in the copyright include the right to transfer ownership of the copyright. 17 U.S.C. § 201(d). That right remains valuable if the government's

---

[11] We do not suggest, however, that the availability of a non-monetary remedy or the temporary nature of a taking necessarily negates a takings claim. *See, e.g.*, *Ruckelshaus*, 467 U.S. at 1010–14 (discussing remedies available for taking); *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 551–54 (Tex. 2004) (discussing damages available for temporary taking).

infringement does not frustrate the copyright owner's reasonable investment-backed expectations. *See Ruckelshaus*, 467 U.S. at 1011–14.

\* \* \* \* \*

We accordingly agree with the court of appeals that Olive's allegations of copyright infringement by the government do not constitute a per se taking. Under the Copyright Act, a "violat[ion]" of "any of the exclusive rights of the copyright owner" is an infringement of the copyright. 17 U.S.C. § 501(a). Such infringement "trespasses into [the owner's] exclusive domain." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984). But infringement does not equate to the "theft" or "conversion" of the copyright owner's exclusive rights. *Dowling*, 473 U.S. at 217. Nor does the act of infringement necessarily destroy those rights because the copyright owner retains them even after the infringement, including the right to exclude the infringer and everyone else from using the copyrighted work.

Although the Texas Constitution waives governmental immunity with respect to inverse condemnation claims, still such a claim must be "predicated on a viable allegation of taking." *Carlson*, 451 S.W.3d at 830. Allegations of copyright infringement assert a violation of the owner's copyright, but not its confiscation, and therefore factual allegations of an infringement do not alone allege a taking. Because the State retains its immunity in the absence of a properly pled takings claim, the court of appeals did not err in sustaining the jurisdictional plea and dismissing the case.

The court of appeals' judgment is accordingly affirmed.

_____
John P. Devine
Justice

16

Opinion Delivered:  June 18, 2021